NASHUA IRON AND BRASS FOUNDRY COMPANY *vs.* CHANDLER ADJUSTABLE CHAIR AND DESK COMPANY.

Suffolk.   March 11, 12, 1896. — June 16, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Goods sold and delivered — Corporation — Evidence — Law and Fact — Instructions.*

In an action against a corporation for goods sold and delivered, consisting of certain castings, if it is in dispute whether the goods were sold and delivered to the corporation or to a partnership which had dealt with the plaintiff and which was the predecessor of the corporation, its certificate of incorporation, showing its assets at that time, which included castings, is admissible in evidence.

In an action against a corporation for goods sold and delivered, it being in dispute whether the goods were sold and delivered to the corporation or to a partnership which had dealt with the plaintiff and which was the predecessor of the corporation, if the defendant contends that the person who ordered the goods, and who was the treasurer of the corporation and formerly one of the partners, had no authority to bind the corporation, the construction of a letter written by him to the plaintiff in relation to the goods, and not signed by him as treasurer, is properly submitted to the jury.

At the trial of an action for goods sold and delivered, against a corporation which was the successor of a partnership which had dealt with the plaintiff, the jury were instructed that the plaintiff could not recover against the defendant by

virtue of any contract between it and the partnership or one C. (who was formerly one of the partners and was the president of the corporation), notwithstanding the corporation might have agreed with them to assume their debts to the plaintiff, and might be bound as between it and them to pay the plaintiff; and that the defendant only would be liable in case the goods had been shipped to and accepted by it, in consequence of an order or purchase made or given by some one who had authority to bind the defendant. *Held*, that the instructions were correct.

CONTRACT, upon an account annexed, for goods sold and delivered, consisting of certain castings, the items relied on being two charges on February 26, and one charge on March 14, 1894. Trial in the Superior Court, before *Blodgett*, J., who allowed a bill of exceptions, in substance as follows.

It appeared that the plaintiff was a corporation duly established by law, and located in the State of New Hampshire; that the defendant was a corporation duly established by law, and organized on February 9, 1894; that since its organization it had had its usual place of business in Boston; that prior to February 9, 1894, three persons, namely, F. A. Chandler, Alfred J. Adams, and James H. Butler, were partners doing business in Boston under the name of Chandler Adjustable Chair and Desk Company; and that prior to that date the plaintiff and the above named partners had certain dealings.

James H. Butler was called as a witness by the plaintiff, and testified that he was the treasurer of the defendant corporation, and had been since February 9, 1894, and that F. A. Chandler was president, and one Hill was general manager and clerk of the corporation. The plaintiff thereupon offered in evidence a certificate of incorporation of the defendant, showing, among other things, the assets of the corporation at the time it was incorporated. The defendant objected to the admission of the certificate, but the judge admitted it; and the defendant excepted. The witness was then asked, " What were those assets made up of ? " and answered, " Patterns, castings, furniture, etc., of the new corporation." The witness was then further asked whether he could state from the corporation books how all this was made up, and he testified that he could not; that the corporation had nothing to do with the plaintiff, and never did have; that the corporation had been doing no business before February 9, but that the partners were doing business as a company

under the same name, and the manufactured assets referred to in the certificate were the goods of the old company, and were sold to the new company; that the plaintiff and other concerns filled the orders of the old partnership; that the witness acted as general agent of the old partnership; that Chandler was designated as president, and looked after the mechanical part of the business; that the witness also acted as secretary and treasurer of the partnership; and that he always signed his name " J. H. Butler," and he did not think that he ever used the name " treasurer," but might have done so.

The witness was thereupon asked what kind of work he did under the corporation. This question was objected to by the defendant, but the judge admitted it; and the defendant excepted. The witness then testified that he was custodian of the money and paid it out; that he gave orders in the letters when they first started, before Hill came in as general manager; that Hill came in just after the formation of the corporation; that he made bargains for the new corporation; that he knew Chandler went up to Nashua, but did not know that the goods were shipped down to Cambridge, but did know they were shipped to Somerville; that he knew also they were billed to the partnership; and that they were billed, as all goods' had been, to the Chandler Adjustable Chair and Desk Company.

The witness was then asked whether the goods that were shipped down to Somerville were part of the assets that were in the certificate of incorporation; to which the defendant objected. The judge admitted the question; and the defendant excepted. The witness testified that he could not swear whether the castings spoken of were included in the certificate of incorporation or not, but that the things sworn to were the assets of the old partnership; that the account shown in the certificate was made up by their attorney; that the figures were not made up under his direction; that the corporation had a bookkeeper, and he had kept the records of the partnership; and that the figures in the certificate were made up from the accounts which he kept, and he thought that they included the goods of the plaintiff.

Upon cross-examination, the witness testified that the castings which were sent down some time in February were the two

items which were given in the declaration as of February 26; that they represented approximately about $1,500; that the castings were never received by the corporation, and were never accepted by the corporation; and that they were now where they were originally left.

The witness further testified that he had examined the records of the corporation, and there was no vote authorizing any officers of the corporation to accept those castings; that the plaintiff was notified by the witness that the castings would not be accepted because they were defective; that the partnership did not continue in existence after the formation of the corporation, except for a certain purpose, merely for settling up the business; and that he had written to the plaintiff to that effect.

On re-direct examination, the witness testified that the partnership was merged in the corporation, but that all the business of the partnership was not absorbed or carried on by the corporation; that the plaintiff had two accounts; that since February 9 he had written letters and had given orders for the transaction of business; that he had carried on other correspondence in reference to castings with other people, who were making them for the corporation; that although he did not have authority to do so by the corporation, he had taken that authority, and they had ratified everything that he had done; and that he could not say whether the partnership had made a bill of sale of their goods and assets to the new corporation, but that, if it was necessary to have one, they certainly had.

Arthur P. Baker was called as a witness by the plaintiff, and testified that he was treasurer of the plaintiff corporation, and resided at Nashua; that the plaintiff had been a manufacturer of iron and brass castings since 1890; that he was acquainted with Butler, who, in April, 1893, came to New Hampshire to see the plaintiff about the manufacture of some iron castings; that he represented himself to be the secretary and treasurer of the Chandler Adjustable Chair and Desk Company; that, as the result of that conversation, the plaintiff began to manufacture goods for the Chandler Adjustable Chair and Desk Company; that he met Butler frequently at the Boston office; that he first learned of the existence of the corporation about February 9 or 10, 1894; and that, at the time of the formation of the corpora-

tion, the plaintiff had on hand a number of sets of school furniture castings, and a miscellaneous lot of castings in different stages of manufacture, in bolts, set screws, and springs that went with them.

The plaintiff thereupon offered a letter, dated February 14, 1894. The defendant objected to the admission of the letter. The judge admitted the same; and the defendant excepted.

The letter was as follows:

"Boston, February 14, 1894.

"Mr. A. P. Baker, — I wrote you fully that we wanted all the full sets sent to F. A. Chandler, and a bill of them sent us. The balance we want a separate bill of, and want you to hold them until it suits our convenience to take them. All we want now is the full sets. According to this bill there are 270 odd of the 1's and 298 of the 2's complete. We want them in a salable condition to sell to the city of Somerville. Sort them out and send them as directed, and you will have no trouble settling with us. I don't see where the idea of trouble with us entered your mind. We don't want to buy any goods of you only as we want them. I return this bill and you need not return it to me again. Send the whole sets as ordered, and then a separate itemized bill of the balance. We may conclude to even up some of them afterward. Yours,

"Chandler Adjustable Chair and Desk Company,

"J. H. Butler.

"We want a sight of our money, and do not care to owe you until we are wanting the goods. Two thousand of the lid supports will do now. As to the bill of our stock on hand at your factory, will say: This company to-day is a Massachusetts corporation, $25,000 capital full paid and running according to Massachusetts laws. I am authorized to close up the business of the old company. They do not want to accept this stock in the unsalable condition it is in, therefore I return you this bill. Now they want you to ship them the goods in a salable condition, that is, all full sets 1 and 2 complete, to F. A. Chandler, Somerville, Mass., Freight, East Somerville Depot. Billing them to company. The balance of stock we want a separate bill of, before accepting which they want a settlement in full, and a payment of the money due them, then they will be satisfied. Yours, J. H. B."

The witness further testified that he received the letters and carried on the correspondence for his company; that he shipped the even sets on February 26, and the miscellaneous lot of castings were shipped on March 14, and that bills were sent on February 26, billed to the Chandler Adjustable Chair and Desk Company; that he was then dealing with the corporation; that the condition of the goods shipped was good, the same as that of the goods which had been furnished the whole year; that he met Butler both before and after the goods were shipped; that he had some conversation with Butler about the payment of the goods; that the plaintiff wanted some money, and he came to see Butler specially about that; that Butler told him that the corporation was responsible; and that it was organized with a capital of $25,000, and would settle when the proper time came, but they wanted time to look over the stock and see that the full amount of it was safe in Somerville. This testimony was offered and admitted against the defendant's objection; and the defendant excepted.

On cross-examination, the witness testified that he first commenced to have business with the partnership known as the Chandler Adjustable Chair and Desk Company in the early part of April, 1893; that he had personally met all the gentlemen who composed that firm; that the arrangement under which the plaintiff was to do business and actually did do business with the partnership was that the partnership from their Boston office, through their agents, were to solicit orders, place orders with the plaintiff, and then the plaintiff would manufacture the goods, fill the orders, and collect the money; that the plaintiff received the money for the different orders, and receipted the bills; and that the plaintiff was keeping on hand a certain amount of stock all the time, to have enough on hand to fill the orders as they came in, according to agreement.

J. Frederick Kimball testified that he was foreman of the plaintiff; that he saw Chandler at Nashua, who saw certain goods, and said they were all right, and said, "You can ship them"; that he was not sure of the date, but it was not a great while before the goods were shipped; and that he could not say whether it was before or after the 10th of February.

Edward W. Dowd testified that he was superintendent of the

plaintiff, and first spoke to Butler about April, 1893 ; that, as a result of the meeting, the plaintiff commenced to manufacture goods, and concluded to keep a thousand sets on hand; that a letter from the Chandler Adjustable Chair and Desk Company was the first information that the plaintiff got of the formation of the corporation ; that he saw Chandler when he came to Nashua to look at the goods; that he did not know that Chandler stated definitely whom he represented; that he merely said, "Ship the goods"; and that he said he had a place where he thought he could put those castings in Somerville.

Upon cross-examination, the witness testified that Chandler had been to Nashua a number of times ; that he thought that the two orders composing the $1,500 sued upon were manufactured as early as September, 1893; that the plaintiff carried about a thousand sets on hand all the time; that the partnership knew that the plaintiff had this stock on hand; and that Butler told them to keep a thousand sets on hand.

Frederick W. Hill was called as a witness by the defendant, and testified that he was general manager and clerk of the corporation, and was clerk at the time the following vote, dated February 15, 1894, was passed :

"Voted, To purchase of Mr. F. A. Chandler his devices for a chair back and ink well, for which applications for patents are now pending, for the sum of forty-eight hundred and forty-one and 92/100 dollars, and that in further consideration for said sum said Chandler shall agree to assign to the Chandler Adjustable Chair and Desk Company all future inventions which shall be made by said Chandler for the term of twenty years now ensuing, and that said sum be paid by assuming all the bills due by the partnership of the Chandler Adjustable Chair and Desk Company in which said Chandler is now liable "; and that the corporation did not accept the goods in any way.

At the suggestion of the judge, the by-laws were read as far as they related to the duties of treasurer, and were as follows :

"The treasurer shall perform all duties usually pursuant to his office. He shall give such bond for the faithful performance of his duties as the directors may require."

There was no vote of the directors ratifying any acts which Butler had done.

Frederic A. Chandler testified that he was president of the defendant corporation; that he went to Nashua on March 8, 1894, after the first lot of goods referred to by the plaintiff had been shipped; that he had not seen the first lot; that they were packed in a barrel where he could not see them; that he ordered them shipped to his own order at Somerville; and that he did not have any authority from the corporation to have them shipped to the corporation.

Upon cross-examination, he testified that he did swear to the account filed at the State House; that the stock list was a list of the old company's stock; that all the stock was transferred from the old company to the new corporation; that he had charge of the mechanical part of the business; and that Butler opened all correspondence of the corporation and answered it, and transacted all the business.

Butler, upon being recalled, testified that, when he wrote the letter of February 14, he was acting for the partnership in the matter. On cross-examination, he testified as follows:

" *Q.* You were not acting for Mr. Chandler, were you? *A.* Yes, sir.

" *Q.* Now, which do you say you were acting for? *A.* It was under the name of the partnership.

" *Q.* Now, I ask you whether you were acting for Mr. Chandler? *A.* Yes, sir.

" *Q.* In the first place you say you were acting for the partnership? *A.* Yes, sir.

" *Q.* You were acting for both of them, were you? *A.* Yes, sir.

"*Q.* You were acting for Mr. Chandler and you were acting for the partnership? *A.* Yes, sir.

" *Q.* So, when you signed the 'Chandler Adjustable Chair and Desk Company,' you were acting for Mr. Chandler individually? That is whom you were acting for? *A.* Yes, sir."

Frederick W. Hill, upon being recalled, testified that he examined the records, and there was no vote authorizing the president of the company to have the goods shipped, or to purchase the goods.

Arthur P. Baker was recalled, and identified a letter of September 20, addressed to " J. H. Butler, Treasurer Chandler

Adjustable Chair and Desk Company"; and testified that he always addressed his letters in that way.

Butler was again recalled, and testified that he received the two bills which were sent on February 26 and 27; and that he returned the bills to Baker for the plaintiff, and he sent them back to him, stating that he did not want the bills in that form.

At the conclusion of the testimony, the defendant asked the judge to rule, as matter of law, that the letter of February 14, 1894, was not written by Butler as treasurer of the corporation, and did not bind the corporation, or enable the plaintiffs to maintain this action. The judge declined so to rule, but left it to the jury to say in what capacity the letter was written; and the defendant excepted.

The defendant thereupon requested the following rulings:

" 1. Upon all the evidence in the case the plaintiff cannot maintain this action against the defendant corporation.

" 2. There is no evidence in this case which would warrant the finding by the jury that any officer of the corporation purchased, or was authorized by the corporation to purchase, the merchandise, so that the corporation would be bound by such alleged purchase. . . .

" 4. If the items in dispute were originally sold to Chandler, or the partnership, any promise to pay for the items not in writing, made by any officer of the corporation, would not be binding upon the corporation. . . .

" 8. This is not an action declaring upon any promise of the defendant corporation pursuant to any vote of the corporation, and the vote of February 15, 1894, of the corporation is not competent evidence for the purpose of imposing any liability upon the defendant to the plaintiff in this action. . . .

" 10. The plaintiff in this action must prove a delivery of the merchandise in question as essential to the completion of a sale. And as the two items of February 26, 1894, ($1,518.86,) were delivered after the passage of the vote of February 15, 1894, there is no evidence that the same were delivered by authority of the defendant corporation, and the defendant cannot be held liable therefor in this action.

" 11. The vote of February 15, 1894, is not sufficient to render the defendant liable to the plaintiff for any claim which

might become due from F. A. Chandler, or the partnership, to the plaintiff corporation after the date of passing the vote."

The judge declined to give such rulings, and instructed the jury, among other things, as follows:

" The simple question which you are to decide upon the evidence in this case is whether or not goods which the plaintiff says were shipped on the 26th of February and the 14th of March of the present year were, in fact, sold to the defendant corporation. That is all there is in the case. There is no dispute that prior to the shipment of those goods the plaintiff, a corporation doing business in New Hampshire, had, at different times, business dealings with a partnership carrying on business in Massachusetts, and that the members of that partnership adopted as a firm name, under which they had been doing business, the name of the Chandler Adjustable Chair and Desk Company. . . . Those goods were not the property of the partnership, which the partnership would have had the right to take, unless the New Hampshire corporation had seen fit to allow them to take them. The New Hampshire corporation had the goods; they had never been delivered; there had been no attempt at delivery; there had been no acceptance. . . .

" Now, what happened when the corporation was organized? Your attention has been called, in the first place, to the certificate of payment of its capital stock and its investment in property as required by the laws of Massachusetts; and you find a statement that there were transferred to the corporation castings, woodwork, and manufactured furniture to the amount of $2.944.20. . . . And the contention of the plaintiff is that the identical goods which the plaintiff says it sold to the corporation make up a part of the goods described in the first item under the head of castings, woodwork, and manufactured furniture, said to be of the value of $2,944.20. Now you will say, upon all the evidence in the case, bearing in mind especially the testimony of Mr. Butler, who is described as the treasurer of the partnership, and who was confessedly the treasurer of the new corporation, whether it is true that these goods are comprised within the description contained in this certificate of castings, woodwork, and manufactured furniture.

" Then, further, the records of the corporation are put in evi-

dence, and there is the record of the vote of the directors, passed on the fifteenth day of February of this year, in which, for a consideration recited, the corporation promised to assume and pay the liabilities of the partnership of which Mr. Chandler had been a member.

"Under that vote, as between the corporation and Mr. Chandler, the corporation was bound to assume and discharge any liability existing on the part of the old partnership to the New Hampshire corporation. . . .

"I have told you the nature of that liability; it was in one sense a contingent liability, because, if the New Hampshire corporation did not see fit to offer or to deliver the goods, there would be no claim which could be enforced against the partnership. But if the corporation did see fit to insist upon the partnership taking those goods off the hands of the corporation, there was a liability, and that liability, for a good consideration, the corporation assumed; and as between the Massachusetts corporation — the defendant corporation — and Chandler, it was the duty of the corporation to pay what was necessary to discharge that liability.

"You might suppose, because of the two things to which I have called your attention, — first, this vote of the corporation undertaking to pay the debts of the partnership, and, secondly, the language used in this certificate, and which you may find shows that as a part of the capital of the corporation these goods on hand in Nashua were included, — you might as business men assume in view of those facts that nothing more was needed to enable the plaintiff to maintain this action. You might say, 'Why did not the defendant corporation pay? It agreed to pay.' And the defendant corporation, you may say, received the identical goods according to its certificate of incorporation by reason of the action taken by these parties who united in forming a corporation, and saying that the capital had been invested in that way. . . . You may be satisfied that there is no sort of doubt that the Massachusetts corporation stepped into the shoes of the old partnership in every particular, taking not only the name under which the old partnership carried on the business, but taking everything that the old partnership had, — its merchandise on hand, its bills receivable, its patents, and every dollar's

worth of property of every sort and description that the old partnership had, under an agreement to pay all the indebtedness of the old partnership, and yet the plaintiff could not maintain this action. . . . And the reason is, if I may state it so that you will understand it, that in the case I have supposed, with only the two facts which I have called to your attention, there is no contract between the Massachusetts corporation and the New Hampshire corporation. . . .

" Now you will proceed to inquire whether after the formation of the Massachusetts corporation that corporation bought and received these goods. If it did buy them and received them, it must pay for them ; and the only importance of these other matters to which I have called your attention is, mainly, as bearing upon the question of the authority of the officers of the Massachusetts corporation, and as tending to throw light upon the acts of the officers of the new corporation which otherwise might be doubtful in meaning. . . .

" If you are satisfied that Mr. Butler had authority to bind the corporation, and that in writing that letter he referred to the corporation, and the plaintiff reasonably understood it as referring to the corporation, then there is no defence as to that shipment of goods, — the complete sets, — unless you find that the goods were defective, and not such as the plaintiff was required to furnish. . . . Something has been said as to there never being any acceptance of the goods by the partnership or by the corporation. If the goods were shipped pursuant to an order given by somebody who had authority to bind the corporation, and came here, and were taken into the custody of the corporation, that is a sufficient acceptance to enable the plaintiff to maintain this action. In other words, it shows all that is necessary to constitute a sale and delivery. . . . The letter of the 14th was not written, you will bear in mind, after that vote was passed by which the corporation assumed the indebtedness of the partnership ; and so that fact of itself would not constitute authority to the treasurer to bind the partnership. But the goods were not received until a later time, and I cannot exclude the vote wholly from your consideration as bearing upon the authority of the treasurer. But you may consider that vote as bearing upon the authority of Mr. Chandler, the president of the corporation, who

went to Nashua and examined these goods, knowing, as he must have known, what the corporation had promised to do, and knowing, as he must have known, if you find it is a fact, that these goods constituted a part of the assets of the corporation because turned over by the partnership to the corporation, in determining whether. he would have, by reason of those two things, authority to direct the shipment of the goods to Massachusetts upon the credit of the corporation, and the corporation would be bound to pay for them."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*J. J. Feely,* for the defendant.

*E. O. Achorn,* for the plaintiff.

MORTON, J.   The defendant virtually concedes that we properly may assume that the trial proceeded on the footing that the only issue was whether the goods included in the two items of February 26 and March 14 .were sold and delivered to the defendant.   We understand that there was no dispute as to the amount, or that the goods named were delivered by the plaintiff to and were received by some one after the defendant corporation was organized.

Various requests for rulings were made by the defendant, and various exceptions taken to the admission of evidence, but we understand the defendant now to rely only on two and possibly only one of the requests, and to contend that the certificate of incorporation should not have been admitted, and that Butler had not authority to bind and did not bind the corporation.

It was a question of fact whether the goods in suit were included in the certificate of incorporation.   If they were, it cannot be said that that fact naturally would not have some tendency to show that the goods when delivered were delivered to and accepted by the corporation and not by the partnership.

The by-laws of the corporation provided that the treasurer should have the powers ordinarily or usually appertaining to that office.   And there was evidence which would justify the jury in finding that, according to the course of business of the treasurer and the construction which the corporation had given by its acts to his power, Butler had authority to bind it in regard to the purchase of the goods in question.   He tes-

tified that he gave orders and made bargains for the new corporation before Hill came in as general manager, and "that he had carried on other correspondence in reference to castings with other people, who were making them for the corporation," and that the corporation "had ratified everything that he had done." As tending to show that Butler actually did bind the corporation, the plaintiffs rely very strongly on the letter of February 14. Ordinarily the construction of a written instrument is for the court. But where the facts on which the construction depends are themselves in dispute, they are to be settled like other questions of fact. It was for the jury to say, therefore, in what capacity Butler wrote that letter, and to whom he referred by certain expressions in it. And the evidence justified the jury in finding that he wrote it in his capacity of treasurer of the corporation, and that the expressions referred to the defendant corporation.

The two requests were covered by the instructions to the jury, which, so far as reported, were full and accurate.

The jury were told expressly, and at some length, that the plaintiff could not recover against the defendant by virtue of any contract between it and the partnership or Chandler, notwithstanding the corporation might have agreed with them to assume their debts to the plaintiff, and might be bound, as between it and them, to pay the plaintiff, and that the defendant only would be liable in case the goods had been shipped to and accepted by it, in consequence of an order or purchase made or given by some one who had authority to bind the defendant. It could not properly have been ruled that there was no evidence that the goods were delivered by authority of the defendant.

*Exceptions overruled.*