PLUMMER et al. v. HILLSIDE COAL & IRON CO. et al.

(Circuit Court of Appeals, Third Circuit.　June 13, 1900.)

No. 24.

1. MINES AND MINERALS—CONVEYANCE OF MINERAL—SEVERANCE FROM SURFACE.

By an instrument under seal, duly acknowledged and recorded, an owner of land leased the same for a term of 100 years for a fixed price, to be presently paid, and an annual rental of one dollar, the lease being conditioned as follows: "It being, however, clearly understood that the possession which the said Thomas [lessee] acquires under this lease shall extend only to the use of the leased premises as a coal field; that is to say, the said Thomas shall have full right, power, and possession to search for coal anywhere on the leased premises, in any manner he may think proper, to raise the coal when found from the beds, at all times to enter and carry away the coal, * * * and to sell the same for his own benefit and profit. * * * These rights and privileges shall extend to the heirs * * * and assigns of the said Thomas during the term aforesaid." The instrument further reserved the right to the lessor and his heirs, so long as they resided on the leased premises, to dig whatever coal they might want for their own use, "but not to sell, so as to interfere with the works of said lessee." *Held*, that such instrument was a present demise, and, though in terms a lease, operated not only to work a severance of the surface of the land from the underlying coal, but as a sale of the coal with the right of removal within 100 years, and that after such severance the continued occupation of the surface of the land by the lessor and those claiming under him did not create title in them to the coal by adverse possession or by limitation.

2. SAME—CONSTRUCTION—OPERATION OF CONVEYANCE.

The title to the underlying coal having passed by such instrument to the lessee, the possession was thereafter referable to such title, which could only be extinguished by actual adverse possession distinct from possession of the surface. The failure of the lessee to enter and mine the coal for any length of time short of the 100 years would not affect his title, nor would it be forfeited to the lessor by a failure to pay the annual rental for a number of years, in the absence of any provision for such forfeiture in the lease.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

S. B. Price, for plaintiffs in error.

E. N. Willard, for defendants in error.

Before DALLAS and GRAY, Circuit Judges, and BRADFORD, District Judge.

BRADFORD, District Judge.　This case is here on a writ of error to the circuit court for the Western district of Pennsylvania.　The plaintiffs in error, plaintiffs below, brought an action of ejectment against the defendants in error, to recover six-sevenths of the coal underlying about 145 acres of land in the borough of Blakely in Lackawanna county, Pennsylvania.　The defendants having pleaded the general issue, the case went to trial and a verdict was by instruction of the court returned for the defendants on which judgment was duly rendered.　The assignments in error are numerous and it is unnecessary to consider them seriatim.　Both parties claim title through one Samuel Callender, and the plaintiffs also assert title by virtue of alleged adverse possession, abandonment and forfeiture.

Callender died intestate in 1851 leaving as his heirs seven children, six of whom in 1881 conveyed whatever interest they may have had in the coal in controversy to Edward E. Cannon, whose alleged title is claimed to be vested in Emma A. Plummer, one of the plaintiffs. This case does not relate to the title to the surface of the land described in the writ of ejectment, but to the title to the coal underlying that land. Callender and Thomas Meredith executed an instrument in writing under seal dated October 1, 1828, relating to the mining of coal underlying the whole or a portion of the land described in the writ. It was as follows:

"This agreement made the 1st day of October, A. D. 1828, between Samuel Callender, Jr., of the Township of Blakely, in the County of Luzerne and State of Pennsylvania, of the one part, and Thomas Meredith, of Belmont, in the County of Wayne and State aforesaid, of the other part, witnesseth: That the said Samuel doth lease and to farm let unto the said Thomas all the land that he now holds or is possessed of either by deed, article of agreement or by any other title in said Township of Blakely, County and State aforesaid, except one hundred acres of land which the said Samuel purchased of William Woodbridge by article of agreement, about one hundred acres. The said land leased to the said Thomas contains one hundred and thirty acres or thereabouts, and the lease is to continue for one hundred years from this day. It being, however, clearly understood that the possession which the said Thomas acquires under this lease shall extend only to the use of the leased premises as a coal field, that is to say, the said Thomas shall have full right, power and possession to search for coal anywhere on the leased premises in any manner he may think proper, to raise the coal when found from the beds, at all times to enter and carry away the coal in wagons, sleds or other vehicles, and to sell the same for his own benefit and profit. And also that he shall have the right to occupy whatever land may be useful or necessary as coal yards; these rights and privileges shall extend to the heirs, executors, administrators and assigns of the said Thomas during the term aforesaid, and also to his and their agents, engineers, laborers and workmen. It is also understood that in case it shall be either useful or necessary to make roads of any description through the leased premises for the purpose of transporting the coal to market it may be done, taking care to do the least possible damage to the land or the improvements, and in case it may become necessary for securing the full enjoyment of the premises aforesaid, as a coal field as aforesaid, then the said Samuel covenants and agrees to execute such further writings as counsel learned in the law may deem proper at the expense of the said Thomas, his executors, administrators or assigns. And the said Thomas, for himself, his heirs, executors, administrators and assigns covenants, promises and agrees to pay to the said Samuel on the 1st day of August next the sum of two hundred dollars in manner following: So much money as may remain due for principal and interest on a contract for land entered into by the said Samuel with the heirs of Samuel Meredith, deceased, on which he now resides in said Township of Blakely, the residue in cash and also an annual rent of one dollar payable on the 1st day of October in each and every year. And in case the coal on the leased premises shall prove extensive and abundant and of an average thickness of ten feet, then the said Thomas on these facts being satisfactorily proved, agrees to pay to the said Samuel the further sum of one hundred dollars. It is also agreed that the said Samuel or his heirs, so long as they reside on the leased premises, shall have a right to dig whatever coal they may want for their own use, but not to sell so as to interfere with the works of said lessees. Provided always, nevertheless, that the said Thomas, his heirs, executors or administrators, by endorsing forty dollars on the contract aforesaid, made by the said Samuel with the heirs of Samuel Meredith, deceased, at any time previous to the 1st day of August next, shall have full right and authority to declare this agreement and lease absolutely null and void anything in this instrument of writing to the contrary notwithstanding. For the true and faith-

104 F.—14

ful performance of the covenants in this agreement and lease the parties within named bind themselves, their heirs and administrators, each to the other firmly by these presents. Witness our hands and seals," etc.

The above instrument was duly acknowledged and recorded. It was not disputed at the trial that the land acquired by Callender from William Woodbridge was not in whole or in part included in the land described in the writ. It was admitted on both sides that the land on which the coal in controversy is located was part of a larger tract for which Edward London took out a warrant dated January 27, 1804, under which an official survey was made September 8, 1804, and returned to the land office March 1, 1808. The plaintiffs claim that at the time of the execution of the above quoted lease Callender was not the owner of all the land described in the writ; that from twenty to twenty-five acres thereof were not acquired by him until afterwards and therefore were not subject to the provisions of the lease. The defendants on the other hand contended that Callender was at the time of the execution of the lease the owner of all the land described in the writ. There was evidence on both sides of this question. It appeared that Callender took title to the whole or a portion of the land so described from Isaac London, a son of Edward London, then deceased, prior to the execution of the lease. Isaac London and his wife executed February 14, 1840, to Callender a deed duly acknowledged purporting to convey to him land including the same tract mentioned in the writ. This deed contained the following recital:

"It being part of a tract of land claimed by Edward London, deceased, and becoming the property of the said Isaac London of the first part by heirship, and surveyed to the party of the second part in the year of our Lord 1819 and possession given and deed made out and burned before recording by accident."

There was uncontradicted evidence that the original deed from Isaac London to Callender was burned in Callender's house which was destroyed by fire in or about 1830. There was also uncontradicted evidence that the deed of February 14, 1840, was written under the dictation of Callender. Isaac London executed a lease under seal bearing date October 1, 1828, to Meredith for the term of one hundred years from that date, the general provisions of which were similar to those contained in the above mentioned lease from Callender to Meredith bearing the same date. This lease from London to Meredith included all the coal in any land that London then held or was possessed of by deed, article of agreement or by any other title in Blakely township, being about two hundred and thirty acres. This lease was duly acknowledged and recorded. The tenth assignment of error is based on the refusal of the court to instruct the jury as follows:

"If the jury believe the testimony of Stephen Callender that his father obtained possession of the northwesterly part of the Dolph lot in 1833, and the Dolphs occupied or used the lot prior to that time from about 1820, and that the coal under said lot was not leased or sold to Thomas Meredith by either Isaac London or Samuel Callender; they may render a verdict in favor of the plaintiffs for said twenty or twenty-five acres northeast of the Cadwalader line."

In view of the above quoted recital in the deed of February 14, 1840, from Isaac London and wife to Callender under whom the plaintiffs claim and of the circumstances attending its preparation and execution, and of the character of the evidence, we think the court was justified in refusing to charge as requested. The twelfth assignment is based on the admission in evidence of the lease from London to Meredith of October 1, 1828. This assignment clearly cannot be sustained. The lease either did or did not include the coal underlying a portion of the land described in the writ. If it did, it was properly admitted. If it did not, its admission was at most harmless error. The case before us largely turns on the effect of the lease of Callender to Meredith of October 1, 1828. It appeared from the evidence that all the rights which Meredith acquired from Callender under that lease, save in so far as they may have been affected by the considerations presently to be noticed, passed to and became vested in the defendants prior to the commencement of this suit. The lease was for the term of one hundred years in consideration, inter alia, of the payment of the sum of two hundred dollars, an annual rent of one dollar payable October 1st in each and every year, and the further sum of one hundred dollars "in case the coal on the leased premises shall prove extensive and abundant and of an average thickness of ten feet." The more material of the remaining stipulations in the lease are as follows:

"It being, however, clearly understood that the possession which the said Thomas acquires under this lease shall extend only to the use of the leased premises as a coal field, that is to say, the said Thomas shall have full right, power and possession to search for coal anywhere on the leased premises in any manner he may think proper, to raise the coal when found from the beds, at all times to enter and carry away the coal in wagons, sleds or other vehicles, and to sell the same for his own benefit and profit, and also that he shall have the right to occupy whatever land may be useful or necessary as coal yards; these rights and privileges shall extend to the heirs, executors, administrators and assigns of the said Thomas during the term aforesaid and also to his and their agents, engineers, laborers and workmen. * * * It is also agreed that the said Samuel or his heirs, so long as they reside on the leased premises, shall have a right to dig whatever coal they may want for their own use, but not to sell so to interfere with the works of said lessees."

The lease contains words of present demise. It is not executory, as claimed by the plaintiffs. It operated not only to work a severance of the surface of the land from the underlying coal, but as a sale of coal with the right of removal within one hundred years. After such severance the continued occupation of the surface of the land by Callender and those claiming under him did not create title in them to the coal by adverse possession or the statute of limitations. In Plummer v. Iron Co., 160 Pa. St. 483, 28 Atl. 853, the lease from Callender to Meredith of October 1, 1828, was under consideration. The court said:

"This instrument contemplates a sale of the coal under the leased premises at a fixed price, to be increased one hundred dollars if the quantity of coal reach the proportions described in it. The right of removal was to be exercised within one hundred years. The fact that the instrument is in the form of a lease is not material when the character of the transaction is apparent. * * * A written contract, though not under seal, granting the privilege of digging all the coal or ore on the vendor's land, is equivalent to a conveyance

of the title to the coal or ore in fee. * * * Such a conveyance operates to sever the surface from the underlying stratum of coal; and after such severance the continued occupancy of the surface by the vendor is not hostile to the title of the owner of the underlying estate, and will not give title under the statute of limitations."

In Kingsley v. Iron Co., 144 Pa. St. 613, 23 Atl. 250, the lease from London to Meredith of October 1, 1828, was considered and the same doctrine was laid down, the court, among other things, saying:

"Where a fair interpretation of the written agreement shows that a sale was intended by the parties, and a right to mine and remove all the coal is conferred by it, in express terms or by plain and necessary implication, it will constitute a sale, notwithstanding a term is created within which the coal is to be taken out. We hold that the writings in this case constitute a sale of the coal to be mined within the term stated therein."

In Plummer v. Iron Co., supra, the court, referring to the severance of the surface of land from the underlying coal, said:

"After such a severance, the possession of the holder of each estate is referable to his title. The owner of the surface can no more extend the effect of his possession of his own estate downward, than the owner of the coal stratum can extend his possession upward, so as to give him title to the surface under the statute of limitations. The owner of the surface can be affected only by the invasion of the surface. The owner of the underlying stratum is not bound to take notice of the invasion of the estates that do not belong to him; but when his own estate is invaded he is bound to take notice. The conclusion thus reached disposes of the title by possession set up by the plaintiffs, and of their right to recover in this case."

And in Armstrong v. Caldwell, 53 Pa. St. 284, the court said:

"The owner of the surface can acquire title against the owner of the minerals underneath by no acts, or continuous series of acts, that would not give title to a stranger. If the owner of a coal mine is not in actual possession, and the owner of the surface, or any other person digs pits or drives adits into the minerals and carries on mining operations there continuously for the statutory period, adversely to the right of any other, he may acquire a right. In such a case he takes actual possession of the entire body of minerals in the tract of land."

There is nothing in the case to show that Callender opened and continuously worked the coal underlying the land described in the writ adversely to Meredith and those claiming under him for the statutory period in such manner as to create title by adverse possession. Callender excepted and reserved to himself and his heirs so long as they should reside on the premises "a right to dig whatever coal they may want for their own use, but not to sell so as to interfere with the works of said lessees." Callender and his heirs from time to time exercised this right for their domestic purposes. On one or two occasions this right may have been exceeded, but the evidence wholly fails to show that Callender or his heirs so removed coal from the premises as to acquire title to the coal in place by adverse possession as against Meredith and those claiming under him. The plaintiffs contend that whatever rights Meredith or those claiming under him had were forfeited through non-payment of rent reserved by the lease after October 1, 1849, and of the additional sum of one hundred dollars agreed to be paid "in case the coal on the leased premises shall prove extensive and abundant and of an average thickness of ten feet." In or about 1890 the defendants ascertained that

the amount of such coal satisfied the above requirement. The lease contained no clause authorizing its forfeiture for such non-payment and in the absence of such a provision we cannot hold that a forfeiture occurred. The plaintiffs and those under whom they claim might by a proper remedy have enforced payment of rent in arrear and of the one hundred dollars. But this point is not before us for decision. The plaintiffs further contend that there was evidence tending to show abandonment of the rights of Meredith and those claiming under him which should have been left to the jury, arising not only from the non-payment of rent and the one hundred dollars above mentioned, but from their omission until a short time before the commencement of this action to open and work the coal underlying the lands described in the writ. This contention cannot be sustained. We think the learned judge below was right in holding as matter of law that these facts were insufficient to justify the finding by the jury of abandonment. The rights of Meredith and those claiming under him were not merely inchoate, conditional or contingent. They had a vested right in the underlying coal and an estate therein. That right or estate, save by release or other proper conveyance or by adverse possession, could not be terminated during the term of one hundred years specified in the lease. As was said in Plummer v. Iron Co., supra, "all idea of haste in development or operating is excluded by the terms of the instrument, and the time for commencing the work of mining is left to the discretion of the lessee." The same doctrine was recognized in Armstrong v. Caldwell, supra, where the court said:

"Nor does the owner of the minerals lose his right or his possession by any length of non-user. * * * Neglect of the grantee to enter, as we have seen, did not interfere with his right, or raise any presumption against it. Having the title, the possession was presumptively in him, or those holding under him; and the burden was on the plaintiff to show that he, or his father under whom he claimed, had taken and maintained that adverse, continued, notorious and hostile possession which is essential to bar an owner's right. * * * But such possession must be distinct from that of the surface. It is unaided by surface rights or surface occupancy."

This action was not brought to enforce the payment of the rent in arrear and the one hundred dollars; nor is it necessary to determine whether it would lie for that purpose. The plaintiffs declined the tender in July, 1890, of the unpaid rent reserved under the lease from Callender to Meredith as follows:

"July 18, 1890. We decline to accept above tender; the instruments and rights under it having been abandoned, and claim said contract is outlawed. The party of the second part, or Meredith, has not complied with the covenants, express or implied, never took possession or exercised any right thereunder."

It is evident that this action was not brought to enforce any rights under the lease, but was instituted and prosecuted in hostility to rights claimed by the defendants thereunder. Its object is to recover possession of the coal, and not of rent or purchase money. For the reasons above given and without taking up the assignments of error in detail we are satisfied that none of the latter can be sustained.

The judgment of the circuit court is affirmed with costs.