HALLA et al. v. ROGERS et al.

(Circuit Court of Appeals, Ninth Circuit. February 7, 1910.)

No. 1,704.

MINES AND MINERALS (§ 67*)—MINING LEASE—WRONGFUL EXCLUSION OF LESSEE—JURISDICTION OF EQUITY TO GRANT RELIEF BY INJUNCTION AFTER EXPIRATION OF TERM.

Defendants leased a placer mining claim to complainants for a term of years with the right to work the same and extract the mineral therefrom, paying a percentage of its value as royalty, during the term; time being of the essence of the contract. Before the expiration of the first year, defendants wrongfully excluded complainants from the claim and prevented them from working it during the entire remainder of the term.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

*Held*, that the instrument, in addition to being a demise of the claim for the term stated, also vested complainants with the right to become the owners of the mineral therein on condition that it be extracted and converted into personalty during such term; that, having wrongfully prevented complainants from complying with such condition, defendants thereby waived or estopped themselves from exercising the right to exclude complainants from the claim on the expiration of the term, and until they had a reasonable time to extract the ore they had contracted to purchase; and that a court of equity had power to protect complainants in the exercise of such right by injunction, where it would result in irreparable injury.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 187; Dec. Dig. § 67.*]

Appeal from the District Court of the United States for the Second Division of the District of Alaska.

Suit in equity by W. J. Rogers and Albert Fink, copartners as the Golden Bull Mining Company, and others, against Otto Halla and others. From an order granting a preliminary injunction, defendants appeal. Affirmed.

Elwood Bruner, J. Allison Bruner, Wm. A. Gilmore, Albert H. Elliot, and P. M. Bruner, for appellants.

J. C. Campbell, W. H. Metson, F. C. Drew, C. H. Oatman, and J. A. MacKenzie, for appellees.

Before GILBERT and MORROW, Circuit Judges, and HUNT, District Judge.

HUNT, District Judge. This is an appeal by defendants from an order of injunction pendente lite granted by the United States District Court for the Second Division of Alaska, restraining defendants from interfering with the peaceable possession of the Golden Bull placer mining claim, situated in the Cape Nome recording district. Omitting details and such other matters as are unnecessary to the consideration of the questions involved, the material facts may be stated thus:

The complaint filed June 30, 1909, states, in substance: That on February 26, 1906, defendants, who were owners of the Golden Bull placer claim, made in writing a so-called "lease" thereof to plaintiffs for a term ending July 1, 1909, which provided, among other things, that time was of its essence, that plaintiffs should at once enter upon and work and mine the claim steadily and continuously during the mining seasons, that they should do the necessary representation, that they should keep a true account of all clean-ups, and that they should pay to defendants certain percentages of the values of all gold and other metals extracted during the term; that on February 17, 1907, defendants wrongfully ejected plaintiffs from, and took possession of, the claim, whereupon plaintiffs brought a certain action against defendants to recover possession, in which action defendants pleaded that plaintiffs had breached the covenants of the lease, the action resulting in a judgment for plaintiffs, which was affirmed by this court; that, in obedience to the mandate of this court in that action, plaintiffs were reinstated and yet remain in possession of the claim; that as soon as plaintiffs were put in possession, June 1, 1909, defendants

conspired to secure an injunction against plaintiffs' opening or working the claim, and succeeded on June 3, 1909, in obtaining it upon giving a $25,000 bond, whereby plaintiffs have been prevented from working the claim during the remainder of the term; that the conspiracy was for the purpose of preventing plaintiffs from enjoying the fruits and profits of the lease, and with an agreement that the plaintiffs therein would, on July 1, 1909, dismiss the collusive action, and thereupon the defendants would themselves take possession and work the claim and take the proceeds; that all the pay gravel could and would have been mined and extracted by plaintiff during the term but for the wrongful acts and conspiracies of defendants, and that because of such acts and conspiracies plaintiffs have been and are unable to enjoy any of the benefits or profits from the lease; that unless plaintiffs be permitted to enjoy the leasehold estate for such reasonable time as may be necessary for them to work the claim and extract the minerals which they could and would have taken out but for the wrongs of defendants, they will suffer damages in the sum of $75,000; that defendants threaten to, and will, unless restrained by the court, on July 1, 1909, oust and eject plaintiffs, and thereupon extract the minerals to which plaintiffs are entitled and convert them to their own use; that defendants are unable financially to respond in damages to plaintiffs. Plaintiffs pray for a decree quieting title in them as to their leasehold estate, for an injunction against defendants restraining them from asserting that the leasehold estate terminated on July 1, 1909, and adjudging that plaintiffs' estate began February 26, 1906, and will end when the plaintiffs have had a reasonable opportunity, free from defendants' interference, to enjoy the benefits and profits which they would have enjoyed but for defendants' wrongs, and for general relief. Defendants demurred. On a rule to show cause why an injunction pending suit should not issue as prayed for, a hearing was had at which the evidence tended to establish the material allegations of the complaint, and on July 10, 1909, an order was entered enjoining pendente lite defendants from interfering with plaintiffs' possession of the claim, and at the same time restraining defendants from mining or extracting any gold or gold dust while the injunction remains in force. From that order the defendants have appealed.

Appellants contend that the complaint does not state facts sufficient to warrant the exercise of injunctional jurisdiction. It is insisted with vigor that, although courts in proper cases may reform or recast a contract so as to make it express the agreement actually made, or cancel or rescind a contract for fraud, accident, or mistake practiced, happening or existing when the agreement was reduced to writing, yet they may not make contracts for parties; and it is asserted in substance, that since the lease here involved was, when entered into, free from taint of fraud or infirmity of accident or mistake, plaintiffs cannot rightly seek, and the court cannot rightly grant, an enlargement of the term stipulated by the parties. From these premises defendants draw the conclusion that the complaint, which shows that the leasehold estate expired on July 1, 1909, is insufficient, and hence that the temporary injunction was erroneously granted.

We concede, as an elementary proposition, that no court, whether administering legal or equitable remedies, may make contracts. Courts may declare what contracts were made, and award appropriate relief by way of damages or specific performance, or both. But we cannot sustain the contention that in the case at bar plaintiffs seek only to induce the court to make or alter a contract, or that the court, by its order, has made a contract or altered the contract contained in the lease. Perhaps the words of the complaint, literally interpreted, bear the meaning which defendants place upon them. But the complaint sets up the facts and prays for general relief as well as for the specific remedies to which plaintiffs deem themselves entitled upon those facts. They will, therefore, be awarded such relief, if any, as the pleadings and proof warrant.

What, in brief, is the situation? On February 26, 1906, defendants made a lease to plaintiffs of an unpatented placer claim for a term ending July 1, 1909, under covenants on plaintiffs' part to do the annual representation work, to mine the claim steadily and continuously during the term on pain of forfeiture, and to pay of the value of the deposits extracted certain percentages as royalty. Within less than a year after the term began, defendants wrongfully ousted plaintiffs and kept them out of possession until plaintiffs regained possession on June 1, 1909, and on June 3d—two days later—in furtherance of the conspiracy, and by means of a collusive suit, and with the purpose of preventing plaintiffs from working the claim and to drive them to an action for damages, so that defendants, who are all insolvent, might, on July 1, 1909, and immediately thereafter, take possession, eject plaintiffs, and mine and extract deposits of great value, defendants stopped all work by plaintiffs. But for the wrongful acts, conspiracy, and collusion of defendants, plaintiffs could and would have extracted all the pay gravel in the claim, and unless permitted to work the claim for such reasonable time after July 1, 1909, as will enable them to do what they were prevented by defendants from doing, they will be irreparably damaged in the sum of $75,000.

In an endeavor to ascertain what property, if any, is conveyed, and what rights, if any, are granted, by an instrument, whether it be called a lease or something else, affecting mining claims or minerals, some important distinctions must be observed. Minerals are land (United States v. Castillero, 2 Black, 17, 17 L. Ed. 360) so long as they are undisturbed, and must be conveyed with the same formalities as other lands are conveyed. The owner of both the minerals and the other land may convey the minerals, in which case the corpus—the corporeal hereditament—passes. Thereby a severance is effected, the vendor remaining the owner of that part of the land which does not consist of minerals, and the vendee owning the land which consists of minerals. The owner may, on the other hand, convey the minerals upon condition that the vendee extract them by a specific time, or in a stipulated mode, or that title shall pass only when certain royalties be paid; in these instances there is no present consummated sale. An example is found in Plummer v. Hillside Coal & Iron Co., 104 Fed. 208, 43 C. C. A. 490, where the lease contained words of present demise with the right in the tenant to remove the coal within 100 years; and, although the court

in that case said that the words of the present demise operated as a "sale of coal with the right to removal within 100 years," it should seem that the court meant to declare that the demise operated as a contract for the sale of the coal, the sale to take place only when, within the term, the coal should be raised. In the case at bar there was no present or out-and-out sale of the minerals made in the instrument, called a "lease," of February 26, 1906. Its language is not such as, of itself, could then convey the minerals lying within the demised claim. But although the minerals were not sold to plaintiffs by that instrument, defendants parted with certain interests in them, and plaintiffs acquired certain vested rights to them. By that instrument defendants did two things: (1) They demised to plaintiffs the claim for a term ending July 1, 1909; (2) they granted to plaintiffs the right, expiring July 1, 1909, to work the claim and extract the minerals which upon extraction should belong to plaintiffs. Now, (1) the demise was of a corporeal thing or hereditament; (2) the grant of the right to plaintiffs to take the minerals, which right was exercisable by them within the lands of defendants, was an incorporeal thing or hereditament. This right is at common law that species of an incorporeal hereditament called the right of "turbary" or of "profit à prendre."

That such grant is of an incorporeal right or hereditament is well established (United States v. Castillero, supra; Johnstown Iron Co. v. Cambria Iron Co., 32 Pa. 241, 72 Am. Dec. 783), notwithstanding the loose statement made by some text-writers and courts to the effect that such a grant is an out-and-out present sale.

The instrument of February 26, 1906, contained on the part of the defendants the implied covenant of quiet enjoyment during the term, and, of course, that defendants would not interfere with plaintiff's possession, work, and extraction. Defendants impliedly covenanted that plaintiffs might, without let or hindrance by them, have the full term of the lease for exploration and extraction, and also that immediately upon extraction the minerals should become the property of plaintiffs. In other words, defendants covenanted that they would not breach the contract, but would permit plaintiffs to exercise the right granted of being the owner of all, or so much of, the minerals, as plaintiffs could extract during the full term. Defendants, for a valuable consideration, therefore, granted to plaintiffs the right to acquire the ownership of that which was real property when the grant was made, upon the condition that the right should be exercised by July 1, 1909. Plaintiffs performed the agreement on their part, except in so far as they were prevented from doing so by the unlawful acts of the defendants. By such unlawful acts plaintiffs were prevented from extracting the minerals within the term expressly stipulated by the parties. True, time was declared to be of the essence of the contract; but defendants wrongfully prevented the plaintiffs from working steadily and continuously, and also from taking out the minerals, within the term so fixed.

Looking through the form and shadow to the substance, as we must (Texas v. Hardenberg, 10 Wall. 89, 19 L. Ed. 839), we perceive that defendants contracted in writing for the sale or disposal to plain-

tiffs of certain land, the sale or disposal to be consummated and the legal title to pass when, and as soon as, plaintiffs, by extraction before July 1, 1909, converted the lands into chattels. What is called a mineral lease is, said Lord Cairns, in Gowan v. Christie, 2 Scottish Appeals, L. R. 273, really "a liberty given to a particular individual, for a specific length of time, to go into and under the land, and to get certain things there if he can find them, and to take them away, just as if he had bought so much of the soil," and, when his Lordship remarked that such a lease is a sale out-and-out, he referred, as we think, to the time of extraction. Whether we hold the conduct of defendants was a waiver, or amounted to a quasi estoppel, the effect is the same. An injunction restraining defendants from taking advantage of their own wrong which prevented plaintiffs' enjoyment, within the term, of the profits of the contract, bears, in its nature and effect, much resemblance to a decree specifically enforcing the contract in plaintiffs' favor; defendants, by their own wrongful acts, either having waived the stipulation as to the term, or being quasi estopped to assert it. Equity acts specifically, endeavoring to award such remedy as will put the parties precisely in the condition which they should occupy, and does not award relief by way of compensation except under extraordinary circumstances. It will not suffer the invasion of a right without affording the appropriate remedy, and such is the flexibility of the remedies which such a court may grant that it is indeed difficult to conceive of a state of facts in which its strong arm is powerless to interfere. The wrongful acts which the defendants threatened to do are destructive trespasses—trespasses which, if not restrained by the court, will result in a destruction of part of the freehold, in and to which freehold the plaintiffs have a vested right which will, if they be protected therein, ripen into a perfect title. The effect of a perpetual injunction, if decreed, will be to prevent defendants from working the claim and extracting the minerals, and to permit plaintiffs, who have not been able so to do because of the wrongs of defendants, to mine the claim and extract the minerals therefrom.

The destructive trespasses threatened by the defendants are injuries which are irreparable by definition, the injury going to the substance of the estate (Boyd v. Desrozier, 20 Mont. 444, 52 Pac. 53); and it is therefore unnecessary to consider the question of the adequacy of the $25,000 bond, or the insolvency of the defendants, though these considerations might be of moment under different circumstances. The equitable doctrines which are applied every day to other contracts for the sales of lands seem to be those which should here govern. Where a vendor wrongfully prevents a vendee from performing a condition precedent on his part to be performed, under a valid executory contract, courts will not suffer the vendor to escape on the ground of such default occasioned by his own wrong, but will order that if the vendee perform within a time certain, the vendor must convey. So if the lessor unlawfully prevents the lessee from removing from the demised property a house which the latter had the right to remove during the term, by virtue of an agreement in the lease, and the legal remedy be inadequate, the chancellor will, we think, after the expiration of the

term, enjoin the lessor from interfering with its removal by the lessee, even though the house belong to the lessor. Were the plaintiffs now working the claim and extracting the minerals, could defendants in a suit brought by them to oust plaintiffs, or to enjoin them from working and extracting the deposits, prevail against the facts in this suit if pleaded by the plaintiffs? Would the court declare that plaintiffs were without right within a reasonable time to become the owners of the property which defendants agreed might become theirs? We believe that both questions would be answered in the negative.

It is apparent to us that if the plaintiffs be not granted the remedy of injunction they will be irreparably injured. The awarding of this remedy is not discordant, but is in harmony, with the principles which must guide a court of equity. The lack of case precedent for the application of the principles which we invoke is no obstacle to the granting of the remedy, which is clearly indicated, and, indeed, required, by the undisputed facts.

The order is, therefore, affirmed.