## GAUNT v. ALABAMA BOUND OIL & GAS CO., Inc., et al.

## ALABAMA BOUND OIL & GAS CO., Inc., v. GAUNT.

(Circuit Court of Appeals, Eighth Circuit. May 30, 1922.)

### Nos. 5893, 5897.

1. **Tender ⊂⇒15(6)—Of check good unless objection is made.**

A tender by check on a bank where the drawer had funds, and which would have been paid if presented, is good, unless timely objection was made to the manner of payment.

2. **Landlord and tenant ⊂⇒112(1)—Waiver of objection to payment of rent by check.**

Where a lessee sent the lessor a check in payment of rent some time before it was due, retention of the check by lessor, without presenting it for payment, or making objection to lessee until long after the rent was due, *held* a waiver of any objection to the form of payment.

3. **Mines and minerals ⊂⇒78(1)—Time of payment of rent till drilling begun under oil lease held not extended by partition suit; "suit affecting property."**

Under a provision of an oil lease requiring payment of cash rent until drilling was begun, that "if suit be instituted affecting above-described premises" the time for beginning of a well or for payments of rental should be extended until final termination thereof, a partition suit instituted after the death of the lessor *held* one "affecting the property."

4. **Words and phrases—"Affecting" defined.**

The usual meaning of the word "affect" or "affecting," as referred to an object, is to act upon, operate upon, or concern such object.

[Ed. Note.—For other definitions, see Words and Phrases, Affecting.]

5. **Mines and minerals ⊂⇒78(1)—Time for drilling or payment of rents under oil lease extended as long as litigation affecting property continued.**

Under a provision of an oil lease for a term of three years that the institution of a suit affecting the property should extend the time for drilling or payments of rental from the date of filing suit until its final termination, such a suit operated to extend the term of the lease by such length of time as the litigation continued.

Appeals from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Suit in equity by the Alabama Bound Oil & Gas Company, Inc. and others against L. D. Gaunt. Decree for complainant, from which both parties appeal. Affirmed.

John Embry, of Oklahoma City, Okl., and Andrew W. Little, of Cushing, Okl. (Embry, Johnson & Kidd, of Oklahoma City, Okl., on the brief), for appellant in No. 5893 and appellee in No. 5897.

Everett C. Mead and Robert R. Burns, both of Tulsa, Okl. (George T. Brown, of Tulsa, Okl., on the brief), for appellees in No. 5893 and appellant in No. 5897.

Before STONE, Circuit Judge, and TRIEBER and MUNGER, District Judges.

MUNGER, District Judge. This is an appeal from a decree confirming the validity of an oil and gas lease and enjoining the appellant from interfering with operations under the terms of the lease. The lease had been executed by Ida Ropers, as owner of a tract of land

in Payne county, Okl., to C. B. Shaffer, as lessee, and was duly recorded. By a series of assignments the lessee's interest was conveyed to a corporation called the Alabama Bound Oil & Gas Company, hereafter called the appellee. Ida Ropers died after the execution of the lease, and as the result of a partition suit between her heirs the land was sold to appellant. The term of the lease was for three years from February 27, 1917, and as much longer thereafter as oil or gas was found in paying quantities. The lessee covenanted to begin a well on the land on February 27, 1917 or thereafter to pay the lessor a yearly rental of $100 payable quarterly in advance, until the well was commenced; the lease to continue for the term if such payments were made, but to terminate if the payments were not made. A further covenant of the lease reads as follows:

"It is further agreed that if suit be instituted affecting above described premises, or adverse to the interests of the lessee hereunder, that thereupon the time for either the commencement or completion of a well, or for the payments of rental hereunder shall be extended from date of filing of such suit until final termination thereof, and the rentals or obligations accruing during said litigation shall not be chargeable against lessee."

The appellant claimed that there was a default in the payment of the rental for the period of the lease beginning February 27, 1919, and when the appellee on November 15 following attempted to drill a well on the land, he threatened violence in case of continuance of the effort and served a notice on appellee that the term was at an end and a warning to stay off of the land. This suit was then instituted, and a temporary injunction was given to appellee against the appellant's interference. Under its protection appellee continued drilling operations and brought in a 75-barrel well on August 24, 1920. The appellant claims that appellee failed to show that it was the owner of the lease, because of some errors in recitals in some of the assignments; but the descriptions of the lease conveyed were otherwise sufficiently identified in the assignments to sustain the portion of the decree granting reformation and the finding of title to the lease in appellee.

[1] The appellant claims that the term of the lease had come to an end because of nonpayment of rent by the lessee for the period beginning February 27, 1919. The lessee on January 11, 1919, mailed a letter to Ida Ropers, the original lessor, inclosing a check for the amount of the rental for the ensuing year. This letter and the check were returned to the lessee, with the information that Mrs. Ropers was dead and that the land had been sold to the appellant. The lessee then wrote to appellant, stating the fact of the sending of the check to Ida Ropers and of its return, and offering to send a check to appellant, if he was the owner of the land. Appellant answered that he had bought the land without knowledge of the lease, and asked for a copy of it and of the date of its recording, and offered to advise the lessee where a deposit of the rental money could be made, if he found a valid lease was in force. The lessee replied, giving details about the lease and of its record, and inclosed a form of bank check in payment of the rental for the year. The check was dated February 12, 1919,.

was drawn on a bank at Tulsa, Okl., was made payable to appellant, stated that it was in payment of the advance rental, and was signed by the lessee as follows: "Ramona Oil & Gas Co., by ———." There was evidence admitted showing that the lessee had sufficient funds in the bank to meet this check, that the bank would have paid the check if it had been presented in the condition that it was, and that, if the check had been returned to the lessee, it would have been signed by its proper officer. The appellant made no acknowledgment of the letter or receipt of the check, but he retained the check in his possession, without making any endeavor to collect it, and without making complaint of its form, until the following November. The appellant asserts that the check in the form in which it was sent was not a sufficient tender of the amount due for rental. The bank on which this check was drawn was willing to pay, and had the legal right to pay, this check in the form in which it was drawn. No written order was necessary to authorize the bank to make payment from the funds of the lessee, provided the depositor had made an order for the payment that the bank was willing to honor. Watts v. Christie, 11 Breav. 546, 552; McEwen v. Davis, 39 Ind. 109, 111; Ellis v. First Nat. Bank, 22 R. I. 565, 572, 48 Atl. 936; Rice v. Bank of Camas Prairie, 5 Idaho, 39, 43, 47 Pac. 856; Neff v. Greene County Nat. Bank, 89 Mo. 581, 585, 1 S. W. 747; First Nat. Bank v. Hall, 119 Ala. 64, 68, 24 South. 526; Whitsett v. Peoples Nat. Bank, 138 Mo. App. 81, 91, 119 S. W. 999; 1 Morse on Banks and Banking (5th Ed.) § 313.

[2] It is ordinarily required of one to whom payment is offered in the form of a check that he make his objection at the time to the offer of a check, instead of an offer of payment in money. Gunby v. Ingram, 57 Wash. 97, 101, 106 Pac. 495, 36 L. R. A. (N. S.) 232; Shay v. Callanan, 124 Iowa, 370, 374, 100 N. W. 55; Schaeffer v. Coldren, 237 Pa. 77, 84, 85 Atl. 98, Ann. Cas. 1914B, 175; Moore v. Twin City Ice & Cold Storage Co., 92 Wash. 608, 613, 159 Pac. 779, Ann. Cas. 1918D, 540; Williston on Contracts, § 1819. Payment by check or similar bank paper has become so generally recognized as acceptable in business transactions that the omission to make objection to the form of payment is regarded as a waiver of the right to demand payment in money. This is especially true where the offerer could readily obtain the money and tender it in time, if the person receiving the check had made objection at the time. A court of equity cannot look with favor upon a claim of the termination of this lease in view of the action of the appellant in receiving this check without making any objection to its form, and in retaining it, without making any effort to ascertain if it would be paid on presentation, and in refusing to give notice to the lessee of any objection before the date when the rental was due, as such conduct amounted to an apparent acquiescence in the form of payment and a waiver of any objection to it. 1 Pom. Eq. Jur. §§ 451, 454; Edwards v. Iola Gas Co., 65 Kan. 362, 367, 69 Pac. 350; Lynch v. Versailles Fuel Gas Co., 165 Pa. 518, 521, 30 Atl. 984.

[3, 4] Was the lease in force at the time oil was found in the well on August 24, 1920? The lease was for three years from February 27, 1917, and as much longer thereafter as oil and gas were found

in paying quantities; but by the provisions which have been quoted the institution of a suit affecting the land or adverse to the interests of the lessee deferred the time for either the commencement or completion of a well until the final termination of the suit. The suit in partition was begun in the state court of Oklahoma by five of the heirs of Ida Ropers against another heir, a minor, and sought a division of the land into parcels among the heirs or a sale of it and a division of the proceeds. The summons was issued on April 30, 1918. The decree found partition of the land unpracticable, and directed a sale at which appellant became the purchaser, and the sale was confirmed by the court on September 9, 1918. Appellant urges that this suit was not of a nature to extend the term of the lease, because the words of the lease, a suit "affecting the above-described premises," refer to a suit which would hazard or injuriously affect the lessee's title. There are some instances in which the word "affect" may be given this restricted meaning; but the usual meaning of the word "affect" or "affecting," as referred to an object, is to act upon, operate upon, or concern such object, and suits of the nature of partition act upon the land and the title of the parties thereto. Nichols v. Voorhis, 74 N. Y. 28, 29; Ensworth v. Holly, 33 Mo. 370, 372; Munger v. Crowe, 219 Ill. 12, 15, 76 N. E. 50; Swigart v. Commissioners of Highways, 277 Ill. 281, 284, 115 N. E. 378; 2 Cor. Jur. 311. Webster's New International Dictionary defines the word "affect" as to lay hold on; to act upon; to produce an effect upon; and gives, as synonymous, to operate, act on, concern.

[5] Another contention of appellant is that any extension of time granted by the lease because of such a suit excused the duty of drilling for oil or gas only while the suit was pending and did not extend the time for such operations after February 27, 1920. Under this construction of the lease, if an action in ejectment hazarding the title of the lessee had been begun the day after the lease had gone into effect and had continued for three years, there would have been no extension of the time in which to drill for oil and gas. The purpose of the contingent extension of time was to enable the lessee to prosecute drilling operations on land unaffected by litigation and to grant an extension of the three-year tenancy by such a period as that litigation continued. The actions of the appellant in interfering with the appellee's attempts to drill wells upon the land were of such a nature as also justified appellee in desisting from further effort of that kind until the time it received the protection of an injunction in this case (Halla v. Rogers, 176 Fed. 709, 714, 100 C. C. A. 263, 34 L. R. A. [N. S.] 120; 13 Cor. Jur. 647), and appellant concedes that this period of delay is not chargeable against appellee. The time from the issuance of the summons in the partition suit until the confirmation of the sale added to this time during which appellee refrained from entry on the land because of appellant's warnings carry the period for completion of a producing well to October 11, 1920, and, as the well was producing on August 24th, the provisions of the lease continued the term of the lessee while oil or gas continued to be produced in paying quantities.

The conclusions announced render it unnecessary to consider other questions argued and lead to an affirmance of the decree. After the decree was entered, the court appointed a receiver for the proceeds of the oil or gas received to the credit of the appellee pending this appeal. The appellee appealed from this supplemental decree. The assignment of error relied upon is that the court acted without receiving evidence in support of some of the allegations in the application for the appointment of the receiver. The answer to the application made no denial of these allegations, and hence they were confessed under the provisions of equity rule 30 (201 Fed. v, 118 C. C. A. v), and needed no proof. While the appointment of the receiver pending the appeal was a proper exercise of the discretion of the court for the protection of the appellee in case of a reversal by this court, yet the receiver never has qualified, because the order of the court provided that, upon the execution of a bond for $25,000 by the appellee, the receiver was not to act, and the appellee executed such bond. The order appointing the receiver has therefore now become moot, and the cross-appeal will be dismissed.

The decree in No. 5893, the principal case, will be affirmed.