NATIONAL MAHAIWE BANK *vs.* WALTER B. PECK.

Berkshire.    Sept. 10, 1878. — Sept. 5, 1879.    AMES & SOULE, JJ., absent.

Where by express agreement, or by a course of dealing, between a bank and one of its depositors, a certain note of the depositor is not included in the general account between them, any balance due from him to the bank when the note becomes payable is not to be applied in satisfaction of the note, even for the benefit of a surety thereon, except at the election of the bank.

A bank discounted for B. a note signed by him as treasurer of a town and indorsed by P, the proceeds of which were to be used by B. in his official capacity. Neither the note nor its proceeds were made part of B.'s personal account with the bank. At the time that note matured, the bank held the personal note of B. which would mature the next day, and which exceeded the amount then standing to the credit of B.'s personal account. As soon as the personal note matured, the president of the bank directed the cashier to apply the balance of B.'s account to the personal note. Three days after, P. presented a check to the bank, signed by B., in which he directed the balance of his account to be paid on account of his official note. The cashier refused so to apply it because of the direction he had received. *Held,* in an action by the bank against P. on the official note, that neither he nor B. could insist that the amount standing to B.'s credit at the maturity of the note should be applied to the payment of the note in suit.

CONTRACT on a promissory note for $500, dated December 29, 1875, signed "Jos. A. Benjamin, Treas.," payable to the order of the defendant in forty-five days after date at the plaintiff bank, and indorsed by the defendant. Trial at June term 1878 of the Superior Court, without a jury, before *Rockwell*, J., who reported the case for the determination of this court, in substance as follows:

Benjamin kept an ordinary banking account with the plaintiff bank. At the time of giving the note in suit, he was treasurer of the town of Egremont, and the bank gave him for this note a draft to be used for the payment of a tax due from the town. The note and the proceeds of it were not made a part of his account with the bank, and the bank regarded the note as an official or town matter.

On February 15, 1876, when this note matured, all things necessary to charge the defendant as indorser were done. On that day, and ever since, the bank held a note, made by Benjamin, which it had discounted, signed "Jos. A. Benjamin," dated November 13, 1875, for $1500, payable in three months after date at the plaintiff bank to one Callender, and indorsed by Callender. And on said February 15, there stood to the credit of Benjamin, as his balance of account, the sum of $381.10, and the same continued so to stand on the books of the bank until about six weeks before the trial, when it was indorsed as of February 16, 1876, on the note for $1500.

On February 16, 1876, the day of the maturity of the note for $1500, the president of the plaintiff bank and its principal financial manager, during business hours, told the cashier, if the $381.10 standing to Benjamin's credit was not drawn out by his checks before the close of business hours, to apply it on the $1500 note; and at the close of the bank for that day, it being found that Benjamin had drawn no checks on said balance, he again directed the cashier to apply it on the $1500 note.

On February 19, 1876, during business hours, the defendant brought to the bank a check of Benjamin, made and handed to defendant on that day, and which was as follows: "South Egremont, Mass., Feb. 15, 1876. $381. National Mahaiwe Bank pay to the order of J. A. B. Treas. note 15 inst., three hundred and eighty-one dollars. Jos. A. Benjamin."

The defendant at the same time, acting at the request of Benjamin, tendered to the cashier of the plaintiff bank this check and $120 in money in payment of the note in suit, and demanded the note. The money had been furnished the defendant by Benjamin, but it did not appear that he informed the cashier or the bank of this fact. The cashier declined to receive the check and money, and told the defendant he could not accept the check, because he had been directed to apply the balance of Benjamin's account on another claim held by the bank, meaning the $1500 note. After this refusal, the cashier did, at the request of the defendant, receive the $120 and indorse the same on the note in suit, it being at the time understood that neither party intended thereby to waive his rights in reference to the check. The $120 have been retained by the bank.

It is not the practice of the bank to charge over-due notes held by it to the account of a depositor until he has sufficient credits to pay the note. Benjamin became a bankrupt in the spring of 1876, and died in July or August of that year.

Upon the foregoing facts, the defendant contended, as a matter of law, that the plaintiff was not entitled to recover; and the judge so ruled, and found for the defendant. If this ruling was correct, judgment was to be entered for the defendant; but if the plaintiff was entitled to recover, judgment was to be entered for him for the sum of $381.10, and interest from February 16, 1876.

*J. Dewey*, for the plaintiff.

*M. Wilcox*, for the defendant.

GRAY, C. J.    Money deposited in a bank does not remain the property of the depositor, upon which the bank has a lien only; but it becomes the absolute property of the bank, and the bank is merely a debtor to the depositor in an equal amount. *Foley* v. *Hill*, 1 Phillips, 399, and 2 H. L. Cas. 28. *Bank of Republic* v. *Millard*, 10 Wall. 152. *Carr* v. *National Security Bank*, 107 Mass. 45. So long as the balance of account to the credit of the depositor exceeds the amount of any debts due and payable by him to the bank, the bank is bound to honor his checks, and liable to an action by him if it does not. When he owes to the bank independent debts, already due and payable, the bank has the right to apply the balance of his general account to the

satisfaction of any such debts of his. But if the bank, instead of so applying the balance, sees fit to allow him to draw it out, neither the depositor nor any other person can afterwards insist that it should have been so applied. The bank, being the absolute owner of the money deposited, and being a mere debtor to the depositor for his balance of account, holds no property in which the depositor has any title or right of which a surety on an independent debt from him to the bank can avail himself by way of subrogation, as in *Baker* v. *Briggs*, 8 Pick. 122, and *American Bank* v. *Baker*, 4 Met. 164, cited for the defendant. The right of the bank to apply the balance of account to the satisfaction of such a debt is rather in the nature of a set-off, or of an application of payments, neither of which, in the absence of express agreement or appropriation, will be required by the law to be so made as to benefit the surety. *Glazier* v. *Douglass*, 32 Conn. 393. *Field* v. *Holland*, 6 Cranch, 8, 28. *Brewer* v. *Knapp*, 1 Pick. 332. *Upham* v. *Lefavour*, 11 Met. 174. *Bank of Bengal* v. *Radakissen Mitter*, 4 Moore P. C. 140, 162.

The general rule accordingly is, that where moneys drawn out and moneys paid in, or other debts and credits, are entered, by the consent of both parties, in the general banking account of a depositor, a balance may be considered as struck at the date of each payment or entry on either side of the account; but where by express agreement, or by a course of dealing, between the depositor and the banker, a certain note or bond of the depositor is not included in the general account, any balance due from the banker to the depositor is not to be applied in satisfaction of that note or bond, even for the benefit of a surety thereon, except at the election of the banker. *Clayton's case*, 1 Meriv. 572, 610. *Bodenham* v. *Purchas*, 2 B. & Ald. 39, 45. *Simpson* v. *Ingham*, 2 B. & C. 65; *S. C.* 3 D. & R. 249. *Pemberton* v. *Oakes*, 4 Russ. 154, 168. *Pease* v. *Hirst*, 10 B. & C. 122; *S. C.* 5 Man. & Ryl. 88. *Hennikcr* v. *Wigg*, Dav. & Meriv. 160, 171; *S. C.* 4 Q. B. 792, 795. *Strong* v. *Foster*, 17 C. B. 201. *Martin* v. *Mechanics Bank*, 6 Har. & Johns. 235, 244. *State Bank* v. *Armstrong*, 4 Dev. 519. *Commercial Bank* v. *Hughes*, 17 Wend. 94. *Allen* v. *Culver*, 3 Denio, 284, 291. *Newburgh Bank* v. *Smith*, 66 N. Y. 271. *Voss* v. *German American Bank*, 83 Ill. 599. In the decision in *McDowell* v. *Bank of Wilmington & Brandywine*,

1 Harringt. (Del.) 369, and in the *dicta* in *Dawson* v. *Real Estate Bank*, 5 Pike, 283, 298, cited for the defendant, this distinction was overlooked or disregarded.

In many of the cases, indeed, the money appears to have been deposited after the debt to the bank matured, so that the case was analogous to the ordinary one of a payment, which, not being appropriated by the debtor, might be appropriated by the creditor. But where the balance of account is in favor of the depositor when his debt to the bank becomes payable, it is a case of mutual debts and credits, which, except in proceedings in bankruptcy or insolvency, neither the depositor nor his surety has the right to require to be set off against each other. Judge Lowell, in allowing money on deposit to the credit of a bankrupt to be set off in bankruptcy against the aggregate debt due from him to the bank, said, " This deposit, though it operates as security and as payment, was not intended for either, but is made so by the bankruptcy of the debtor." *In re North*, 2 Lowell, 487. See also *Demmon* v. *Boylston Bank*, 5 Cush. 194; *Strong* v. *Foster*, 17 C. B. 217.

In *Strong* v. *Foster*, a depositor gave to his bankers a promissory note with a surety, which was not entered in his general banking account; and it was held, that the surety, when sued by the bankers on the note, could not set up, either as payment or by way of equitable defence, that shortly after the note matured the balance of account was in favor of the depositor to a greater amount, and the plaintiffs did not apply that balance in discharge of the note, or inform the defendant for three years afterwards that the note remained unpaid. But the reasoning of the court applies quite as strongly when the balance in favor of the depositor exists at the time when his debt becomes payable, as when it is created by subsequent deposits. Chief Justice Jervis said: " Here the note was never entered in the account at all; the rule as to adjusting balances therefore does not apply." " It would be essentially altering the position of parties, to establish that, because a banker, who holds a note of a third person for a customer, has a balance in his hands in the customer's favor at the maturity of the note, such third person is thereby discharged, if it turns out that the note was given by him as surety. There is no authority in equity for any such position, and none cer-

tainly in law." 17 C. B. 216, 217. And Mr. Justice Willes observed : " As to what was said on the part of the defendant, that, if a set-off arises between the creditor and the principal debtor, the liability of the surety on the note is extinguished; that doctrine would lead to singular results. These securities are often given to increase credits of bankers to their customers. If the liability of the maker were to depend upon the state of the customer's account at any one moment, he might never undergo the liability contemplated at all. The security is given without any reference to the other side of the account. This is the first time, I believe, that it has ever been suggested, that when a note given under circumstances like these falls due, and there is a balance in favor of the customer at the time, that balance must of necessity be applied to the discharge of the note." 17 C. B. 224. Even the usual inference from the entry of such a note in the account may be controlled by other circumstances. *City Discount Co.* v. *McLean,* L. R. 9 C. P. 692.

In the case at bar, it appears that the consideration received by Benjamin from the plaintiff bank for the note in suit was to be used by him in his official capacity as town treasurer, the note was regarded by the bank as an official or town matter, and neither the note nor its consideration was ever made part of his general banking account; and that, when the check in favor of the defendant was drawn by Benjamin and presented at the bank, the bank held a personal note of Benjamin, overdue and exceeding in amount the balance of account in his favor at the time, the president of the bank had directed the cashier to apply this balance to the latter's note, and the cashier so informed the defendant when he presented the check. Under these circumstances, neither Benjamin, the maker, nor the defendant, the indorser, has the right to insist that this balance of account should be applied to the satisfaction of the note in suit, rather than of the other note of Benjamin; and, according to the terms of the report, there must be

*Judgment for the plaintiff.*