### ROSE TAPPER *vs.* BOSTON PENNY SAVINGS BANK.

Suffolk.  January 13, 1936. — May 13, 1936.

Present: RUGG, C.J., CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Savings Bank. Payment. Bills and Notes,* Forgery.

The mere issuance by a savings bank, upon the presentation of a deposit book and a withdrawal order signed by the depositor, of a check upon another bank for the amount of the withdrawal was not a "payment" made upon presentation of the deposit book which, under a by-law of the bank, would have discharged it from liability, and, the withdrawal order having been used and the check procured and cashed by a third person in fraud of the depositor, the bank had no right to deduct the amount thereof from the depositor's account.

CONTRACT. Writ in the Municipal Court of the City of Boston dated April 18, 1935.

Upon removal to the Superior Court, the action was heard by *Fosdick,* J., without a jury, as a case stated. He "found" for the defendant. The plaintiff appealed.

*J. E. Hannigan,* (*F. G. Lichtenstein* with him,) for the plaintiff.

*J. T. Connolly,* (*W. R. Donovan* with him,) for the defendant.

CROSBY, J. This is an action heard upon a case stated, to recover the amount of a deposit made by the plaintiff

in the defendant bank. G. L. (Ter. Ed.) c. 231, § 96. *Wolbach* v. *Commissioner of Corporations & Taxation*, 268 Mass. 365, 372. The record recites that the case stated contains all the material ultimate facts on which the rights of the parties are to be determined. There is no occasion for drawing of inferences under G. L. (Ter. Ed.) c. 231, § 126. See *Marlborough* v. *Lynn*, 275 Mass. 394, 398. The question is one of law whether on the facts the plaintiff could recover in any form of action. *G. E. Lothrop Theatres Co.* v. *Edison Electric Illuminating Co. of Boston*, 290 Mass. 189, 191. It was agreed that if "on the facts" stated the plaintiff was entitled to recover, judgment should be entered for the plaintiff in the amount of $1,661.07 with interest thereon from the date of the writ and costs; but, if the plaintiff was not entitled to recover, judgment should be entered for the defendant for its costs.

The record states that on or about May 20, 1932, the plaintiff opened a savings account in the defendant bank by subscribing her name to the following statement printed on a signature card: "200977. Having deposited a sum of money this day in the Boston Penny Savings Bank, I hereby subscribe to the Regulations and By-Laws and assent to such alterations and amendments thereof as it may at its discretion make. (signed) Miss Rose Tapper"; at the same time she deposited in the defendant bank the sum of $2,043.06 and received a deposit book numbered 200977. So far as material the regulations and by-laws provided that a depositor should receive a pass book as a voucher of his deposit; that "payments" from the deposit could be made only upon presentation of the pass book and entry therein of the withdrawal; and that "payments" upon such presentation should be a discharge to the bank from liability for the amount so paid. On March 15, 1933, the plaintiff delivered the pass book to the Concord Casualty & Surety Company together with a written assignment of her deposit, and an undated withdrawal order slip of the defendant bank signed by the plaintiff and made out in the sum of $1,500. Although the assignment was absolute

by its terms, it was in fact made and received as collateral
security for the plaintiff's agreement, then executed, to in-
demnify the casualty company from loss upon a bail bond
issued at that time by the company in behalf of one Abra-
ham Tapper. In this transaction the casualty company
was represented by one Getter, the manager of its Boston
office, who notified the defendant bank by letter of the as-
signment on the same day. There never was any default
on the bail bond, and the casualty company at no time
became entitled to receive any amount from the plaintiff's
account, or to use the withdrawal slip. The bond was
cancelled by the casualty company in 1934 and notice of
the termination of the assignment was sent to the defend-
ant bank on March 29, 1934.

During the time that the assignment was in force, the
plaintiff's pass book and signed withdrawal order slip were
kept in the office of the casualty company, either in its
files or in the manager's desk. One Rozman, who worked
as a salesman for the casualty company upon a commission
basis, obtained these documents in some unknown manner
without the knowledge or consent of the company. He
filled in the date on the withdrawal slip, and on June 6,
1933, forwarded it and the pass book to the defendant
bank together with a letter, on the casualty company's
stationery, requesting payment to the company in the
amount of the withdrawal order. As a reason for the re-
quest he falsely stated in the letter that the casualty com-
pany had expended money on behalf of the plaintiff for
medical expenses. The letter was signed "William Rozman,
Attorney-in-fact." Upon receipt of this letter the officers
of the defendant examined its records and ascertained the
genuineness of the plaintiff's signature on the withdrawal
slip. The defendant then drew its check upon The First
National Bank of Boston payable to the order of the casu-
alty company in the sum of the withdrawal order less a
four cents tax; and the amount of the order was deducted
from the plaintiff's account. The check, enclosed with the
bank book, was forwarded to the Boston office of the casualty

company. It was agreed that no negligence is to be attributed to the defendant bank for anything done by it up to and including mailing the envelope containing its check or draft to the casualty company. Upon its delivery at the office of the company, Rozman opened the sealed envelope, abstracted the check and the bank book, and indorsed the check "Concord Casualty & Surety Company by William Rozman, Attorney-in-fact, William Rozman Special," and deposited it in his account in The National Shawmut Bank of Boston on June 10, 1933. The Shawmut Bank stamped it "endorsement guaranteed," and received payment from The First National Bank of Boston through the Boston Clearing House. The cancelled check was returned to the defendant. It was agreed that "Rozman alone profited by the foregoing transaction." It is recited in the record that he had authority to issue bail bonds not exceeding $5,000 in amount. He had authority from the company to receive payment of premiums on bail bonds written by him, but it was his duty to turn over such payments to Getter, the manager. He had no express authority to indorse the name of the casualty company on negotiable instruments. His conduct in this transaction was fraudulent, and in excess of any authority express or implied given to him by the casualty company. No contention is made that Rozman had any authority express or implied to indorse the name of the casualty company upon the check made payable to its order by the defendant bank. 12 Am. L. R. 111; 94 Am. L. R. 555.

It appears that the casualty company and its manager first learned of Rozman's actions in April, 1935; and the first knowledge the plaintiff had that Rozman had obtained the check and forged the name of the casualty company thereto and received the proceeds thereof was in November, 1934. It was agreed that the plaintiff was not negligent in not learning of said events sooner. No notice was given to or claim made against the defendant by the plaintiff or by anyone in her behalf prior to November, 1934, when she presented the bank book to the bank and demanded pay-

ment of the same together with the sum of $1,500 withdrawn in the manner above stated.

The plaintiff does not contend that a payment of cash made by the defendant upon presentation of the pass book, however unauthorized or wrongful, would not constitute a discharge under the by-laws by which she agreed to be bound. In *Wasilauskas* v. *Brookline Savings Bank*, 259 Mass. 215, at page 218, it was held that, where one of the by-laws of the defendant provided that "the bank shall not be held responsible for money paid out to any person unlawfully presenting a book," the by-law "protected the bank if, using reasonable care and in good faith, it paid the money on presentation of the book to one who falsely impersonated the depositor." It is the contention of the plaintiff, however, that the payment was not made "upon presentation of a deposit book," but was made against a check to which the indorsement of the payee had been forged or made without authority, and that in these circumstances it did not constitute a discharge of liability for the amount so paid.

G. L. (Ter. Ed.) c. 107, § 45, provides as follows: "Where a signature is forged or made without authority of the person whose signature it purports to be it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority." We are of opinion that this contention is sound. Merely by drawing the check the defendant made no present disbursement; and the payee, the casualty company, being ignorant of the transaction, and not being entitled to any payment, could not have intended to receive it as payment. In these circumstances the transmission of the check did not constitute a payment. *Wasilauskas* v. *Brookline Savings Bank*, 259 Mass. 215. *Cochrane* v. *Zahos*, 286 Mass. 173, 176. See *Ladd* v. *Augusta Savings Bank*, 96 Maine, 510, 518. There is no sound reason

why the propriety of a payment and the risk of a wrongful payment on a negotiable instrument should be determined by different rules, where a savings bank deposit is paid, from those ordinarily determinative of the rights of the parties. In *Wasilauskas* v. *Brookline Savings Bank,* 259 Mass. 215, where the defendant gave its check upon a wrongful presentation of the deposit book, the depositor was held not entitled to recover because the subsequent payment of the check constituted a valid payment thereof; it was not intimated that, if the payment had been wrongful, the depositor would still be barred from recovery. It follows that if the payment to Rozman made indirectly by the bank was wrongful, and for that reason the bank had no right to charge the plaintiff's account therefor, the payment did not amount to a discharge of any of the defendant's indebtedness to the plaintiff. Whether the payment made to one purporting to be the indorsee of the payee was negligence, where it appeared from the indorsement that he had indorsed the payee's signature claiming to have been authorized to do so, need not be considered at this time. See *Newburyport* v. *Fidelity Mutual Life Ins. Co.* 197 Mass. 596. As the indorsement was in fact forged or unauthorized it was inoperative to transfer rights or to give a discharge. G. L. (Ter. Ed.) c. 107, § 45. *Grow* v. *Prudential Trust Co.* 249 Mass. 325. *Metropolitan Casualty Ins. Co.* v. *First National Bank in Detroit,* 261 Mich. 450. *Noah* v. *Bowery Savings Bank,* 225 N. Y. 284. *National Surety Co.* v. *Manhattan Co.* 252 N. Y. 247. *Schwarz* v. *Bank of Pittsburgh National Association,* 283 Penn. St. 200. It results that the payment made by the defendant's deduction of the amount of the check from the plaintiff's account was unlawful. It did not constitute a payment "upon presentation of deposit book," and it was not a discharge as between the plaintiff and the defendant for the amount so paid. *Marcotte* v. *Massachusetts Security Corp.* 250 Mass. 246, 249.

It results that the "finding" of the trial judge must be reversed, and judgment is to be entered for the plaintiff in accordance with the stipulation of the parties in the sum of $1,661.07, with interest from the date of the writ, and costs.

*So ordered.*