CHARLES A. CASTLE, executor, *vs.* ALICE A. WIGHTMAN & others.

Middlesex. February 8, 1939. — April 14, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Gift. Bank and Banking,* Joint account. *Wills, Statute of.*

A purchase by a woman of shares of a coöperative bank, a procuring by the purchaser of a signature card upon which she obtained the signature of another woman to whom she had communicated that "she would take care of" her, and the filing with the bank of the card, bearing an agreement that "this account" should be a "joint account," that in the event of death of either the bank would be liable thereon only to the survivor and that, while both were living, payments to either would discharge liability to both, although the purchaser kept possession of the "pass book" and made all the required payments on the shares and the second woman never saw the book or had it in her possession or saw or communicated with the bank or its officers, established a completed gift to the second woman of a present joint interest in the shares which ripened into full ownership of them on the death of the purchaser.

A contract by a purchaser of shares in a coöperative bank, contained in a signature card filed with the bank and presently creating a joint ownership of the shares by himself and another ripening into full ownership by the other person on the death of the purchaser, was not in violation of the statute of wills.

PETITION, filed in the Probate Court for the county of Middlesex on March 10, 1938.

The petition was heard by *Leggat,* J.

*E. W. Hadley,* for the respondents Benson and another.
*W. F. Rideout,* for the respondent Alice A. Wightman.

DOLAN, J. This is a petition in equity wherein the petitioner, as he is executor of the will of Alice A. Prior, late of Malden, deceased, prays to be instructed to whom "a joint account" in the Malden Co-operative Bank standing in the name of the deceased "and/or Alice Wightman" "is payable." After hearing the judge entered a decree that "the account represented by said pass book is the property of said Alice A. Wightman." The latter is the Alice Wightman before referred to. The case comes before us on the appeal of certain residuary legatees under the will of Alice A. Prior, who will be referred to hereinafter as the deceased.

The evidence is not reported but at the request of the appellants the judge filed a report of the material facts found by him, from which the following facts appear. The "pass book" in question was found by the petitioner among the effects of the deceased. On September 30, 1936, the deceased purchased from the Malden Co-operative Bank forty shares "of its stock." The deceased procured from the bank the "signature identification card required by the bank," signed it and sent it to Alice A. Wightman, who then lived in New Hampshire, for her signature. The latter signed the card "late in October" and returned it to the deceased. Thus completed the card contained the following: "Name   Alice A. Prior   Number 18816   Address Malden Contagious Hospital   Name   Alice A. Wightman Address   Drewsville, New Hampshire   Hereby assenting to the By Laws of the Malden Co-operative Bank, and the rules and regulations of its board of directors, those now in force or which may hereafter be adopted, it is understood and agreed that this account is to be a joint account, and in the event of the death of either of us the Bank shall be liable thereon only to the Survivor and while we both are living payments to either of us shall discharge liability to both." The deceased delivered the card to the bank, which thereupon issued "the book" and delivered it to the deceased, who retained it in her possession until her death. Alice A. Wightman never saw the book "or had possession of it," and made no payments "into the account." The original payment and all payments made on account of the

shares were made by the deceased, and the respondent Wightman never saw or communicated with the bank or its officers prior to the filing of the petition now before us. At some time previous to the purchase of the shares the deceased said or wrote to the respondent Wightman concerning money spent by the latter for her education "that she . . . would take care of . . . [her]."

The evidence not being reported and the report of material facts having been made under the provisions of G. L. (Ter. Ed.) c. 215, § 11, the only question is whether the decree entered is supported by the facts found. "Such a report is to be regarded as a finding of all the material facts on which . . . [the] decision was founded." *Topor* v. *Topor*, 287 Mass. 473, 476. *Goldston* v. *Randolph*, 293 Mass. 253, 255. See also *Birnbaum* v. *Pamoukis*, 301 Mass. 559, 561.

The principles governing the determination of title to so called joint accounts have been considered in many previous decisions of this court. It would serve no useful purpose to review them in detail. The governing principles have been stated with ample citation of authority in the case of *Goldston* v. *Randolph*, 293 Mass. 253. It must be taken to be established that the deceased could legally purchase the shares in joint ownership with the respondent Wightman if she clearly intended that result, and that a present gift could be made even though the deceased retained the pass book, which was representative of the joint ownership. *Goldston* v. *Randolph*, 293 Mass. 253, 256, and cases cited. A present gift, not of the shares themselves but of the interest created therein by the contract with the bank, would be effected without delivery of the pass book to the respondent Wightman, since the contract itself takes the place of the delivery ordinarily required. These principles are not inconsistent with the statement made in *Battles* v. *Millbury Savings Bank*, 250 Mass. 180, to the effect that, while a deposit in joint account payable to either or the survivor is conclusive as between the bank and the parties, as between the survivor and the representative of the estate of the depositor it is still open to

the latter to show by attendant facts and circumstances that the depositor did not intend to make a completed gift of the joint interest in the deposit, and that the mere form of the deposit does not settle the matter. We think that this last principle cannot be taken to mean that the contract of deposit itself, or, as in the case at bar, the contract of purchase of the shares, in the absence of controversy is not efficient to establish a gift of such interests therein as are shown by the terms upon which they were held or issued by a bank, but rather that, where the title is disputed, it is competent to show that the result indicated by the terms of the contract was not actually intended to take place, in that no present completed gift of the apparent interest was actually intended. We think the principle that the mere form of the deposit or purchase does not settle that matter is the same as would be true in the case of investments standing in the name alone of an individual which yet, in proper circumstances, could be shown to be held in trust for another. See *Davis* v. *Coburn*, 128 Mass. 377. Thus, in cases of joint deposit, while the contract of deposit is conclusive as between the parties and the bank, yet it may be shown that, for example, the execution of the contract of joint deposit was procured to be made by the depositor by the exercise of undue influence upon him, *Eddy* v. *Eddy*, 281 Mass. 156, or that it was intended as a matter of convenience, *Moreau* v. *Moreau*, 250 Mass. 110, 112, or that it was void as intended by the depositor to hinder, defraud or delay his creditors, see *Splaine* v. *Morrissey*, 282 Mass. 217, 223, or that the gift of the interest in the joint account was one upon a trust, *Lukey* v. *Parks*, 279 Mass. 244, *Greeley* v. *O'Connor*, 294 Mass. 527, 533; in brief, that the result of a present gift was not intended.

But where it does appear, as we think it does from the facts found in the case at bar, that the purchaser of the shares did intend at the time the transaction was entered into to make a present completed gift of a joint interest in the shares to the respondent Wightman, a present interest in the shares was created in her by a completed contract, which interest ripened into full ownership of the shares at

the death of the deceased. *Goldston* v. *Randolph*, 293 Mass. 253, 257. *Gibbons* v. *Gibbons*, 296 Mass. 89, 90.

We do not agree with the contention of the appellants that in the case at bar there is nothing in the record to show that the purchase of the shares in joint account "was for other than convenience or testamentary disposition, subject to a change of mind and other disposition." We think that the facts found by the judge were sufficient to warrant him in finding, as he did by implication, that the deceased intended the result that was indicated by the terms of the contract of purchase of the shares, that is, that a present completed gift to the respondent Wightman of a joint interest in the shares was intended by the deceased, which upon her death ripened into a full ownership of the shares by the survivor Wightman. This is the only interpretation that we think properly could be given to the action of the deceased in purchasing the shares in joint account, and sending the card to the respondent Wightman for her signature, preceded by the statement of the deceased to her that she was going to "take care of . . . [her]." The contract did not violate the statute of wills, *Batal* v. *Buss*, 293 Mass. 329, 331, and the retention of the pass book by the deceased was but a circumstance shedding light upon her intention. *Goldston* v. *Randolph*, 293 Mass. 253, 257.

*Decree affirmed.*