ELOISE W. SAWYER *vs.* THE NATIONAL SHAWMUT BANK OF BOSTON.

Suffolk.  May 7, 1940. — June 25, 1940.

Present: FIELD, C.J., LUMMUS, DOLAN, COX, & RONAN, JJ.

*Bank and Banking.  Evidence,* Extrinsic affecting writing.

The obligation of a bank in its commercial department to permit withdrawals for the purchase of securities by a husband from a joint account opened by him and his wife under an agreement with the bank, "Either party to sign checks," was not limited nor affected by a statement by the wife, eight months previous to the opening of the account, to an employee of a corporation affiliated with the bank, who, while not an employee of the bank, was permitted by it to act as a go between between it and its customers, that the proceeds of the account were not to be used for the purchase of securities.

Under its agreement made at the opening of a joint account with a husband and wife, "Either party to sign checks," a bank properly honored as drafts on the account charge slips presented by authority of the husband.

CONTRACT OR TORT.  Writ in the Superior Court dated December 24, 1934.

The case was tried before *Walsh,* J.

*T. B. Shea,* for the plaintiff.

*J. C. Reilly,* for the defendant.

RONAN, J.  The plaintiff, in this action of contract or tort, seeks to recover money which she alleges was wrongfully withdrawn by the defendant from a joint account deposited with the defendant and standing in her name and that of her husband.  The case was heard upon an auditor's report and oral evidence.  The plaintiff excepted to the direction of a verdict for the defendant.

There was evidence that the plaintiff on August 17, 1927, went to one of the branch offices of the defendant for the purpose of redeeming certain bonds which had been called for redemption. She talked to an employee of the defendant who referred her to one Gordon who was seated at a desk in the front part of the office.[1] There was a sign upon this desk which read, "The Shawmut Corporation Mr. Gordon." Gordon was an employee of the Shawmut Corporation, a corporation organized under the laws of this Commonwealth which was a duly licensed dealer in securities. All of its capital stock was owned by the defendant. It had a representative in the main office and in the various branch offices of the defendant. Upon the request of a customer of the defendant, and for his accommodation, a representative of the Shawmut Corporation would purchase or sell for the customer securities listed upon the stock exchanges, but it made no charge for the service and made no profit from such transaction. Gordon was not an employee of the defendant. The defendant permitted him to arrange with its customers for the purchase and sale of securities, to deposit the proceeds of sales to the credit of the customer, and to charge his account with the purchase price of the securities bought. Gordon was also authorized by the defendant to arrange with prospective customers for the sale of securities owned by them, and to deposit the proceeds in an account with the defendant after such an account had been opened through arrangement with Gordon. The plaintiff told Gordon that she wished to have certain bonds redeemed and to have the proceeds deposited in a joint account with her husband; that the proceeds would be her personal property and were not to be used for the purchase of stock or for stock speculation. Gordon stated that he was glad she had so informed him, but that she could not open a joint account in the absence of her husband. She then instructed Gordon to

---

[1] The interview with Gordon, hereafter narrated, was at the Arlington Street branch of the defendant in Boston. The opening of the joint account to which this action relates was eight months later at the defendant's Governor Square–Kenmore branch, and was in the defendant's commercial department. — REPORTER.

deposit the proceeds in the account of her husband, which he did.

The plaintiff and her husband opened a joint account with the defendant on April 17, 1928.   Each of them signed a joint account card which read: "Eloise W. Sawyer or F. H. Sawyer   Either party to sign checks and in case of the death of either one the survivor is entitled to draw all the money or any part thereof."   On September 19, 1928, and on December 28, 1928, and at other times thereafter until this joint account was closed in March, 1932, Sawyer purchased certain securities through Gordon, who had general instructions from Sawyer "to buy for him anything he thought good and charge the same to said joint account."   Sawyer did not draw any check for the purchase of these securities but permitted them to be paid for by a charge slip transmitted to the defendant by an agent of the Shawmut Corporation.   The plaintiff had but little money in the joint account after the December purchase.   Her principal complaint is based upon the withdrawals for the purchases in September and December, 1928.   The plaintiff learned of these purchases of September and December, 1928, in April, 1929; and in May, 1929, she demanded of Gordon that he restore to the account the money which she had contributed to the account.   She made no request of her husband for the stock.   She did not request him to sell the stock and turn the proceeds into the account.   The stock could have been sold for at least its cost until August 1, 1929.   The present action was commenced on December 24, 1934.

The joint account card, which the plaintiff and her husband signed at the time the joint account was opened, constituted a contract between them and the bank and established their rights in relation to the bank, irrespective of the interest either may have had in the account or of whatever rights therein they might have had between themselves.   *Kentfield* v. *Shelburne Falls Savings Bank*, 273 Mass. 548.   *Barnes* v. *Chandler*, 277 Mass. 395.   *Castle* v. *Wightman*, 303 Mass. 74.   One of the terms of the contract was that either party might withdraw the account or any part of it, and the bank

in accepting the deposit agreed to this term of the contract. *Chippendale* v. *North Adams Savings Bank*, 222 Mass. 499. *Milan* v. *Boucher*, 285 Mass. 590. *Gibbons* v. *Gibbons*, 296 Mass. 89. The bank, while it thus agreed to honor checks drawn by either depositor, did not agree to see that no checks were drawn by either for the purpose of purchasing securities, and, under the contract, the defendant had no right to refuse to pay checks drawn by Sawyer for the purchase of securities. *Armstrong* v. *American Exchange National Bank of Chicago*, 133 U. S. 433, 466. The statement made by the plaintiff to Gordon months before the joint account was opened, that she did not desire the account to be used for the purchase of stock, could not be shown for the purpose of restricting the authority of the defendant in honoring checks drawn against the account below the limits contained in the contract. *Goldenberg* v. *Taglino*, 218 Mass. 357. *Kennedy Bros. Inc.* v. *Bird*, 287 Mass. 477.

The whole or any part of the joint account could be withdrawn by the individual check of either the plaintiff or her husband. That authority came from the contract of deposit, which expressly provided that "either party [was] to sign checks." In the absence of such a provision or a statute, the money could not be withdrawn except by joint action of the depositors. *Neiman* v. *Beacon Trust Co.* 170 Mass. 452. *National City Bank of New York* v. *Harbin Electric Joint-stock Co. Ltd.* 28 Fed. (2d) 468. See G. L. (Ter. Ed.) c. 167, § 14, as amended by St. 1933, c. 334, § 1. The defendant, accordingly, was bound to recognize the full power that each possessed in the disposition of the funds in this account and was required to honor the checks of either so long as the account was sufficient. *Wiley* v. *Bunker Hill National Bank*, 183 Mass. 495. *Castaline* v. *National City Bank of Chelsea*, 244 Mass. 416.

A bank may recognize the oral request of a depositor to withdraw funds. *Watts* v. *Christie*, 11 Beav. 546. *Gaunt* v. *Alabama Bound Oil & Gas Co. Inc.* 281 Fed. 653. *First National Bank* v. *Hall*, 119 Ala. 64. *First National Bank* v. *Stapf*, 165 Ind. 162. *Neff* v. *Greene County National Bank*, 89 Mo. 581. *Ellis* v. *First National Bank of Woonsocket*, 22

R. I. 565. A check is a written order to a bank to pay out funds from the drawer's account. The written charge slips, which were essentially orders to pay out funds, and which were prepared in accordance with instructions given by Sawyer to Gordon and were used to pay the indebtedness of Sawyer, differed in form rather than in substance from checks that he could have used for the purpose. The use of either would have the identical effect upon the account. The plaintiff's loss resulted from the withdrawal of the funds by her husband rather than from the method he employed. It has been held that the withdrawal of a savings account by means of a check that was accepted in payment is the equivalent of a withdrawal of cash, and the depositor could not complain because a check rather than cash was given to the one who unlawfully presented the pass book. *Wasilauskas* v. *Brookline Savings Bank*, 259 Mass. 215. Compare *Tapper* v. *Boston Penny Savings Bank*, 294 Mass. 335.

The relation existing between the plaintiff and her husband and the defendant was that of creditor and debtor, and the defendant held the funds subject to be paid out in accordance with the directions of either of the depositors. *National Mahaiwe Bank* v. *Peck*, 127 Mass. 298. *Bachrach* v. *Commissioner of Banks*, 239 Mass. 272. *Lynch* v. *First National Bank of Jersey City*, 107 N. Y. 179. *Sundial Construction Co. Inc.* v. *Liberty Bank of Buffalo*, 277 N. Y. 137. Sawyer had authority to direct the defendant to make payments out of the joint account. His power to withdraw funds from this account by checks included the power to withdraw them by charge slips. Payment by the defendant in compliance with these charge slips was valid.

*Exceptions overruled.*