MARY M. MOHAN *vs.* WOBURN NATIONAL BANK.

Middlesex.    January 5, 1943. — February 24, 1943.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & COX, JJ.

*Bank and Banking. Bills and Notes,* Indorser, Payment. *Surety. Tender.*
    *Payment.   Corporation,* Officers and agents.   *Agency,* Scope of
    authority.

Evidence of negotiations between an authorized officer of a corporation
    and the cashier of a commercial bank to the effect that payment of a
    note of the corporation to the bank should be made from funds, in
    excess of the amount of the note, presently to be deposited by the
    corporation, and of a statement by such officer to the bank's teller,
    when such deposit was made by check after the note became due, to
    "be sure and grab the note out of that check," warranted a finding of a
    direction by the corporation to the bank thus to take payment of the
    note which was equivalent or analogous to a tender of payment and
    discharged an indorser whose funds were pledged as collateral for the
    note so that, upon appropriation of his funds by the bank after it had
    failed to take payment of the note from the deposit, he was entitled to
    recover the amount of his funds from the bank as money had and
    received by it to his use.
A finding was warranted that one, who was general manager of and the
    sole person interested in a corporation and who directed its treasurer
    as to the performance of all the acts of his office, had authority to
    direct a bank as to the application of funds of the corporation deposited
    therein, notwithstanding that votes of the directors filed with the bank
    provided for the withdrawal and deposit of funds upon instruments
    signed by the treasurer.

CONTRACT.    Writ in the Superior Court dated May 29,
1940.

The case was tried before *Morton,* J.

*E. C. Jacobs,* for the plaintiff, submitted a brief.

*J. E. Henchey,* for the defendant.

Cox, J.    This is an action of contract, the plaintiff alleg-
ing in her first count, in effect, that the defendant owes her
$963.84 for money had and received to her use.   We are
not concerned with the other count.   The only exception
in the case is that of the plaintiff to the order of the trial

judge directing the jury to find for the defendant on the first count.

The jury could have found that on July 1, 1939, the plaintiff and her husband, who was the sole person interested in Woburn Road Contractors, Inc., hereinafter referred to as the corporation, indorsed its promissory note for $2,000 payable to the defendant on July 11, 1939. Presentment, demand, notice and protest were expressly waived, and the indorsers consented, over their signatures, to the exchange or surrender of collateral security, or the extension of time of payment. The plaintiff pledged with the defendant, as security for her indorsement, her savings account that is the subject matter of this action. It was the plaintiff's understanding that the note was to be paid from funds of the corporation that it was to receive, on or about the due date of the note, from the city of Medford on account of a contract between it and the corporation. The plaintiff's husband was the general manager of the corporation, which was incorporated by him, and the officers and directors of which served at his request. Its treasurer, who was also the bookkeeper, performed all the acts of her office under his direction. On July 1, 1939, he arranged with the defendant's cashier for a loan of $2,000, telling him that he wished it to run until July 11, 1939, inasmuch as it would be paid out of the payment that the corporation would receive from the city and that was due on the tenth of the month and would have to be paid before the fifteenth. Proceeds of the note were deposited to the credit of the corporation. The note was unpaid on the eleventh, and on the thirteenth, the defendant's teller called this fact to the attention of the plaintiff's husband, who told the teller that he expected a check from the city in a day or so and that when he deposited that check the note could be paid out of the deposit. On the fifteenth, he deposited a check for $10,000 from the city to the corporation's credit, and at that time told the same teller with whom he had talked previously to "be sure and grab the note out of that check." He left the bank supposing that the note had been paid, and did not learn until about the first of August,

when the bank statement of the corporation was returned, that the note had not been charged and paid. When he learned this, he went to the bank and talked with the cashier, telling him what he had told the teller and also that the defendant would have to wait until he was able to get some more money with which to pay the note.

The plaintiff was notified by the defendant about April 25, 1940, that there was an unpaid balance on the note, whereupon she talked with the cashier, saying, among other things, that she understood that her husband had told the teller to take the amount of the note from the deposit of the $10,000 check, and that she did not see how, if the defendant failed to do that, it could charge her with the amount of the note, whereupon the cashier said: "well, if you want to call the eloquent language that your husband used, to grab the note out of the deposit, then probably the bank was told to pay the note." She replied that whether the language was eloquent or not, the defendant certainly should have understood that her husband meant "for the bank to pay . . . [itself] out of the deposit which was made on the fifteenth of July." The defendant applied $963.84 of the plaintiff's savings account toward the payment of the note.

On the day that the check was deposited, a number of checks were drawn on the corporation's deposit account, but not to the extent that there was not enough to cover the note. Possibly within a day or two the check that had been deposited would not have been enough for the checks "going to be drawn" and the note. At the close of business on the following days the corporation had these balances: July 15 over $7,500, July 17 over $7,000, July 18 approximately $1,700, and July 19 $738.06. There were no withdrawals from the corporation's account after July 15 that were not made by checks signed by the treasurer and drawn under the instructions of the plaintiff's husband. The financing of the different contracts for the corporation, that is, obtaining money to operate, was undertaken by the plaintiff's husband. On July 1, 1939, he requested the defendant, through the same teller hereinbefore referred to, to charge

the corporation's account with a note due on that day, and the bank, through the teller, did this, as evidenced by a charge slip.

The corporation, as maker of the note, was primarily liable on it, and the plaintiff, as indorser, was secondarily liable. G. L. (Ter. Ed.) c. 107, §§ 19, 83, 86, 89. *Rossi Bros. Inc.* v. *Commissioner of Banks*, 283 Mass. 114, 120, and cases cited. The plaintiff, although in a strict sense merely an indorser of the note, was, in a sense, a surety. See *National Mahaiwe Bank* v. *Peck*, 127 Mass. 298, 301; *Guild* v. *Butler*, 127 Mass. 386, 389, 390; *Maglione* v. *Penta*, 266 Mass. 413, 416; *Atlas Finance Corp.* v. *Trocchi,* 302 Mass. 477, 480. The plaintiff's liability as indorser arises, if at all, upon default in the payment of the note. See G. L. (Ter. Ed.) c. 107, §§ 87, 89, 90.

The relationship between the defendant and the corporation, in so far as deposits were concerned, was that of debtor and creditor, *Bachrach* v. *Commissioner of Banks*, 239 Mass. 272, 273, and cases cited, and money, when deposited to the corporation's account, became the property of the defendant. *National Mahaiwe Bank* v. *Peck*, 127 Mass. 298, 301. We are not concerned in this case with the question of the right or obligation of a bank, such as the defendant, to apply a deposit to the satisfaction of a debt owing from the depositor to the bank where nothing more appears. See *National Mahaiwe Bank* v. *Peck*, 127 Mass. 298; *Furber* v. *Dane*, 203 Mass. 108, 118; *Sawyer* v. *National Shawmut Bank of Boston*, 306 Mass. 313, 317. The question, on the contrary, is whether what we think could have been found to be a direction to the defendant to pay the note in question out of the deposit of the $10,000 check, and its failure to comply, released the plaintiff from her obligations as indorser.

General Laws (Ter. Ed.) c. 107, § 143 (see § 142), provides six ways in which a person secondarily liable on a negotiable instrument may be discharged. It is unnecessary to refer to all of them, but the liability of such person is discharged by any act that discharges the instrument, or by a valid tender of payment made by a prior party. The

section also provides for the discharge of such person by any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved. These last provisions seem to emphasize the nature of the relationship which the law regards as existing between the maker and indorser of a negotiable instrument.

It was said in *Sawyer* v. *National Shawmut Bank of Boston*, 306 Mass. 313, 316, that a bank may recognize the oral request of a depositor to withdraw funds. There can be no question of the duty of a commercial bank to honor the checks of a depositor drawn on his account. *National Mahaiwe Bank* v. *Peck*, 127 Mass. 298, 300. *Sawyer* v. *National Shawmut Bank of Boston*, 306 Mass. 313, 316. We think there can be no question as to the right of a depositor to direct the manner in which a deposit shall be used. He must have the right to say what he will do with his own money, and we know of no rule that requires a bank to accept a deposit unless it wishes. We think that, if money or its equivalent is offered to a bank by way of deposit with specific directions as to what shall be done with it, the bank is under an obligation to comply with those directions if it accepts the deposit. In the absence of any express direction or an agreement to that effect, it is optional with the bank whether it shall apply the deposit on a note of the depositor that it holds. The converse of this proposition must be true. *Sawyer* v. *National Shawmut Bank of Boston*, 306 Mass. 313, 317, and cases cited. *National Bank of Newburgh* v. *Smith*, 66 N. Y. 271. *Bellevue State Bank* v. *Hailey National Bank*, 37 Idaho, 121, 126. The defendant did not comply with the direction. The fact that it could have been found that the corporation, after the direction was given, withdrew the greater part of the deposit in question may have affected any rights that the corporation had against the defendant for its failure to comply with the direction (see *Second National Bank of Lafayette* v. *Hill*, 76 Ind. 223, 229), but we think that it

cannot affect the rights of the plaintiff. In the case of *National Mahaiwe Bank* v. *Peck*, 127 Mass. 298, reference was made to many cases where it was contended that a deposit should have been applied by the bank in payment of the depositor's note, and it was said (page 302) that the money appeared to have been deposited after the debt to the bank matured, "so that the case was analogous to the ordinary one of a payment, which, not being appropriated by the debtor, might be appropriated by the creditor." It may be said that the direction in the case at bar as to the application of a part, at least, of the deposit in payment of the note is equivalent or analogous to a tender of payment. The mere fact of a deposit, with nothing more, would not amount to a tender. The note in question was overdue, and the only right that the defendant had, in so far as the note itself was concerned, was to have it paid according to its terms. The plaintiff, in her position, was entitled to have the bank accept payment. *Hamlen* v. *Rednalloh Co.* 291 Mass. 119, 127, and cases cited. See *Joslyn* v. *Eastman*, 46 Vt. 258; *Fisher* v. *Stockebrand*, 26 Kans. 565, 573–574; *Spurgeon* v. *Smitha*, 114 Ind. 453; *Smith* v. *Old Dominion Building & Loan Association*, 119 N. C. 257. The defendant cannot be heard to say, if the direction was made with authority, that notice of it could not come through the teller, who, it seems, received the deposit. We are of opinion that it was for the jury to determine whether the direction to the bank amounted to a specific appropriation of a part of the deposit for the payment of the note, and that, if the plaintiff's husband had the authority so to direct, the plaintiff may recover.

Little needs be said as to the first of these possible conclusions beyond reference to the facts already recited. It is of passing interest in connection with the use of the word "grab," to note that in the case of *Farmers' National Bank* v. *Jones*, 234 Ky. 591, 597, the court, in discussing the rule as to the duty of a bank to appropriate deposits to the payment of notes, said that nothing could be more embarrassing to a struggling debtor than to have the bank

compelled to "grab" every deposit he makes while his paper is past due.

The permissible findings, to which reference has already been made, as to the position occupied by the plaintiff's husband and his relationship to the corporation, need not be repeated. We think that the jury could have found that he had authority to direct the defendant as to the disposition of the deposit. *Nashua Iron & Brass Foundry Co.* v. *Chandler Adjustable Chair & Desk Co.* 166 Mass. 419, 431, 432. *Parrot* v. *Mexican Central Railway*, 207 Mass. 184, 189, 190. *Hines* v. *Levers & Sargent Co.* 226 Mass. 214, 216, 217. *Condé Nast Press, Inc.* v. *Cornhill Publishing Co.* 255 Mass. 480, 485. See *Kelly* v. *Citizens Finance Co. of Lowell, Inc.* 306 Mass. 531, 532, 533. There was evidence of votes of the directors of the corporation to the effect that the corporate funds be deposited with the defendant, subject to withdrawal by instruments signed by the treasurer and authorizing the defendant to pay such instruments, and that until "further notified in writing," the treasurer was the officer upon whose signature the defendant was authorized to pay or receive such instruments. The bill of exceptions recites that a copy of these votes was filed with the defendant. The copy appearing in the bill of exceptions is dated October 8, 1938, although the certificate of the corporation's clerk therein contained recites that the meeting at which the votes were passed was held on October 8, 1939. Obviously these dates are inconsistent, but, on the authority of the cases just cited, we think that, despite the votes, whenever they were passed, the jury could have found that the plaintiff's husband was authorized to direct the defendant as to the application of the deposit.

The case of *Forastiere* v. *Springfield Institution for Savings*, 303 Mass. 101, is distinguishable.

*Exceptions sustained.*