JOHN D. MALONE, administrator, *vs.* PATRICK WALSH & others.

Essex.    October 8, 1941. — February 3, 1944.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, DOLAN, & RONAN, JJ.

*Gift.  Joint Tenants.  Personal Property*, Joint tenancy.  *Probate Court*, Findings by judge, Appeal.

Even if this court, on appeal from a decree of a Probate Court, assumes belief by the trial judge of all testimony in favor of the decree and accepts that testimony as true, the question, what are proper inferences to be drawn from the basic facts thereby established still is open in this court and the inferences drawn by the trial judge are entitled to no weight.

On findings assumed to have been made by a judge of probate in belief of testimony supporting his decree, the proper conclusion, contrary to that of the judge as shown in the decree, was that a married woman, in changing her account in a savings bank into a joint account in the names of herself and her brother, intended a completed present gift

of a joint interest in the account to the brother and that after her death he was entitled to the deposit by survivorship, although during her life she reserved a right to withdraw both interest and principal and to revoke the joint tenancy and retained exclusive control of the deposit and the deposit book, and her purpose in creating the joint tenancy was to prevent her husband from inheriting any part of the deposit.

PETITION, filed in the Probate Court for the county of Essex on January 10, 1940.

The case was heard by *Phelan*, J.

The case was argued at the bar in October, 1941, before *Field*, C.J., *Donahue*, *Qua*, *Cox*, & *Ronan*, JJ., and after the retirement of *Cox*, J., was submitted on briefs to *Lummus* & *Dolan*, JJ.

*E. S. Farmer*, (*A. P. Teele* with him,) for the respondent Walsh.

*J. J. Foley*, (*J. D. Malone* with him,) for the petitioner.

LUMMUS, J. Mary A. Ryan, late of Lynn, died intestate on December 25, 1939, leaving her husband, Patrick J. Ryan, a sister, Catherine Reigle of Cleveland, Ohio, and three brothers, Patrick, Peter and James Walsh, of Letter-moghera in Ireland. The petitioner was appointed administrator of her estate. In 1939 Mary A. Ryan made three joint deposits in different savings banks in Massachusetts, substantially in the names of Mary A. Ryan and Patrick Walsh (her brother) payable to either or the survivor. This petition is brought under G. L. (Ter. Ed.) c. 215, § 6, as amended by St. 1939, c. 194, § 2, to determine the title to these deposits and to recover them for the estate. *Walsh* v. *Mullen*, 314 Mass. 241. The probate judge found that Mary A. Ryan did not intend that the deposits should pass into the control of her brother Patrick or that any part of the funds should become his property until her death, and found that she did not intend to make a present completed gift. He entered a decree ordering the respondent savings banks to pay the funds, represented by the bank books standing in the joint names as hereinbefore described, to the petitioner. The respondent Patrick Walsh appealed. The judge found the material facts, and all the evidence is reported.

The law on this subject of joint deposits was stated in *Goldston* v. *Randolph*, 293 Mass. 253, 256, 257. It was there said that a change in a deposit to the joint account of the former owner and another " 'would operate as a present and complete gift in joint ownership if she [the former owner] clearly intended such a result.' . . . Such a present gift could be made even though the donor retained the exclusive right to the income of the deposit during her life. . . . A present gift of an interest in the deposit would be effected on the principle of *Chippendale* v. *North Adams Savings Bank*, 222 Mass. 499, and cases following it, by a contract to which the bank, the deceased and the . . . [donee] were parties if the requisite intention on the part of the deceased existed. Delivery of the bank book would not be essential since the contract takes the place of the delivery ordinarily required. . . . Furthermore, a transfer of this nature is not a gift of the deposit as such, but rather a gift of the interest therein created by the contract. . . . And such a gift made in the lifetime of the deceased of an interest in the deposit, though ripening into full ownership of the deposit by the . . . [donee] on the death of the deceased, is not testamentary in character." In *Ball* v. *Forbes*, 314 Mass. 200, 203–204, it was said: "It is settled that, while the contract of deposit is conclusive as between the parties and the bank, and that the contract with the bank takes the place of delivery ordinarily required, and that a present gift could thus be made if that result was intended even though the deceased retained control of the books evidencing the deposits, nevertheless, as between the survivor and the representative of the estate of the deceased, it is still open to the latter to show by attendant facts and circumstances that the deceased did not intend to make a present completed gift of a joint interest in the account, and that the mere form of the deposits does not settle the matter." These statements of the law are supported by other recent cases. *Barnes* v. *Chandler*, 277 Mass. 395. *Batal* v. *Buss*, 293 Mass. 329. *Greeley* v. *O'Connor*, 294 Mass. 527. *Murphy* v. *Donovan*, 295 Mass. 311. *Gibbons* v. *Gibbons*, 296 Mass. 89. *Murphy* v. *Nally*, 301 Mass. 329.

*Castle* v. *Wightman*, 303 Mass. 74. *Sullivan* v. *Hudgins*, 303 Mass. 442. *Berry* v. *Kyes*, 304 Mass. 56. *MacLennan* v. *MacLennan*, 311 Mass. 709. *Colby* v. *Callahan*, 311 Mass. 727. G. L. (Ter. Ed.) c. 167, § 14, as amended by St. 1933, c. 334, § 1. *Sawyer* v. *National Shawmut Bank*, 306 Mass. 313.

There was evidence of the following facts. Mary A. Ryan was born in Ireland on June 24, 1871, and came to this country in 1900. On March 2, 1902, she married Patrick J. Ryan. Two children were born, who died in infancy. A third child, Veronica, was born in 1905 and died in February, 1914. In 1908 Mary A. Ryan and Veronica went to Ireland and remained nine months. Mary was displeased because her husband would not go with her, and also because he was working nights. She left her husband in 1914, when she sold his boats, dogs, hens, guns and fishing tackle without his knowledge. They went to living together again within a year, and parted again in 1915. She had him placed on probation in a District Court with an order for her support. They began to live together again in 1924, but lived together only a few weeks. Though living apart thereafter they were not unfriendly, and sometimes went to a theatre or a restaurant together or spent weekends together. The judge found as follows: "The decedent during her lifetime was not a generous woman, but rather close and penurious, and of a suspicious nature. She insisted to her close associates and friends that she was without funds, and received favors and gratuities from those friends who supposed her to be living in poverty."

The amount of the savings bank deposits in question is approximately $15,000. They were originally established in the name of Mary A. Ryan, the first in a Quincy bank in October, 1915, the second in a Charlestown bank on December 1, 1920, and the third in a Lynn bank on September 13, 1929. There were other deposits in other savings banks, but in May, 1935, they were withdrawn and the money was deposited in one of the three accounts just mentioned.

About April 23, 1935, Mary A. Ryan consulted a lawyer

in Lynn about her savings bank deposits. She wished to make provision for the disposition of her money so that her husband would not get any of it. She showed the lawyer her will, but he told her that her husband could waive the will and take his statutory interest. She destroyed the will in the presence of the lawyer. Then she talked with the lawyer about making a trust agreement, and decided to make one. She told him exactly who were to be the beneficiaries. They were her brothers and sisters, the children of one of her sisters, some cousins, and charities. When the trust instrument was drawn, she decided not to sign it. This was on May 17, 1935. Finally she decided to transfer her deposits to herself and her sister Catherine Reigle jointly. The three deposits already described were transferred into new accounts in the names of Mary A. Ryan and Catherine Reigle, payable to either or the survivor. She told the lawyer that the money had been earned by her own labor. The lawyer drew, and she signed, instructions to Catherine Reigle as to the distribution of the money after her death. The beneficiaries named in those instructions were much the same, and the gifts to them were in much the same amounts, as in the proposed trust agreement. Catherine Reigle was included to the extent of $500 only, though her three brothers in Ireland were to receive $4,000 each. Relatives named Coyne were included for amounts not exceeding $500 each. These written instructions were given to Catherine Reigle on May 20, 1935. Mary A. Ryan retained possession of the bank books at all times, and made withdrawals from the accounts for her own purposes. No withdrawals were made by Catherine Reigle.

Beginning with the summer of 1938 the relations between Mary A. Ryan and Catherine Reigle became unfriendly. The former thought the latter too grasping for money. On December 5, 1938, Mary A. Ryan wrote to her brother Patrick Walsh in Ireland, whom she had not seen since 1908 but with whom she corresponded, saying among other things this: "Now Pat I am going to send papers to you to fill out and sign your name to them and whatever is left if anything

should happen to me you would get whatever is left. There is Michael Coyne and John Coyne and Kate and her good for nothing crowd wishing me to pass away. . . . I know your prayers are helping me." (Spelling corrected.) The "papers" referred to evidently were cards for the transfer of the savings bank deposits into the names of Mary A. Ryan and Patrick Walsh jointly. She wrote Patrick that when the cards had been signed "then they cannot touch anything belonging to me if I died in [the] morning and the Coynes don't get even my old shoes. This doesn't mean anything more than a protection so safety first. Don't say anything to James or his family or to anyone. Keep this to yourself. This is just been for fear the Coynes might try to put me in a place where I could not hear from you and I am not trusting Kate or her daughter either." (Spelling corrected.) On February 28, 1939, she wrote Patrick that she was sending him some more cards to be filled out and returned to her so that she could have them by the first of April. She added, "[If] I don't have it by the first of April I shall make other plans." (Spelling corrected.) On April 4, 1939, the deposit in the Quincy bank was transferred into a new account in the names of Mary A. Ryan and Patrick Walsh jointly. On April 20, 1939, the deposit in the Charlestown bank was so transferred. On May 1, 1939, the deposit in the Lynn bank was so transferred. There was no evidence that Catherine Reigle participated in or knew about this change, and it is to be inferred that she knew nothing about it. But as the judge found, Mary A. Ryan impliedly reserved a power of revocation of any trust created by the joint deposits in 1935 and the instructions to Catherine Reigle, and exercised that power by the transfers in 1939. Mary A. Ryan retained possession of the bank books at all times, and made withdrawals for her own purposes. No withdrawals were made by Patrick Walsh.

On February 3, 1940, the respondent Patrick Walsh wrote from Ireland to the Lynn bank as follows: "In December 1938 I understand that the amount was placed in the joint names of Mrs. Ryan (who was my sister) and myself for the purpose of the money belonging to the person who out-

lived the other, and as such person I now wish to have the account placed solely in my name as no other persons has (sic) any claim to it." A letter from the respondent Patrick Walsh in Ireland to the probate judge contained the following: "The said monies were in the joint names of my deceased sister Mary A. Ryan and myself and it was understood that upon her death the money would be mine. In the year 1938 & 1939 I signed the necessary papers to have the money put in our joint names and claim that I am entitled to the monies now standing to that account absolutely."

The transactions in 1935 were relevant to show the nature of the transactions in 1939. It could be inferred that the motives and intentions of Mary A. Ryan in 1935 still actuated her in 1939. *Whitney* v. *Wheeler*, 116 Mass. 490. *Hagar* v. *Norton*, 188 Mass. 47, 52. *Conroy* v. *Fall River Herald News Publishing Co.* 306 Mass. 488, 493. *Commonwealth* v. *Hayes*, 311 Mass. 21, 29. *Commonwealth* v. *Barker*, 311 Mass. 82, 87. The judge found that "the decedent at all times reserved to herself the right to revoke the transfer to her sister and the later one to the respondent, Patrick Walsh, and that she never intended that the deposits made by her should pass into her brother Patrick's control, or that any part of the funds would become his property until her death." He added, "I further find that the decedent did not intend a present completed gift on either occasion."

We assume in favor of the decree below that the judge believed every piece of testimony in favor of the decree. We accept all such testimony as true. With that assumption the decree has the full benefit of the rule that findings of fact depending upon the credibility of oral evidence made by the judge who saw and heard the witnesses will not be reversed unless plainly wrong. Inferences from the basic facts shown by such testimony, however, are open for our decision, and the inferences drawn by the trial judge are entitled to no weight in this court. *Newburyport Society for the Relief of Aged Women* v. *Noyes*, 287 Mass. 530, 532. *Bratt* v. *Cox*, 290 Mass. 553, 558. *Vergnani* v. *Guidetti*, 308 Mass. 450, 455, 456. *Veazie* v. *Staples*, 309 Mass. 123, 127.

The purpose of Mary A. Ryan to prevent her husband

from taking as distributee of her estate was not unlawful. *Redman* v. *Churchill*, 230 Mass. 415, 418. *Roche* v. *Brickley*, 254 Mass. 584, 588. Her reservation of a right to withdraw both income and principal and to revoke the joint tenancy was not inconsistent with a perfected creation inter vivos of a joint tenancy. *Coolidge* v. *Brown*, 286 Mass. 504, 507. *Batal* v. *Buss*, 293 Mass. 329, 331. *National Shawmut Bank* v. *Joy, ante,* 457. Neither was her exclusive control of the deposits and deposit books. *Perry* v. *Leveroni*, 252 Mass. 390, 393. *Goldston* v. *Randolph*, 293 Mass. 253, 257. *Castle* v. *Wightman*, 303 Mass. 74.

The statement of Mary A. Ryan in a letter to her brother Patrick that "if anything should happen to me you would get whatever is left" (spelling corrected), his statement in a letter to the Lynn bank that the purpose of the joint deposit was to cause the money to belong "to the person who outlived the other," and his statement in a letter to the probate judge that "it was understood that upon her [Mary's] death the money would be mine," may well refer to the time of enjoyment rather than to the time of vesting in interest, and are not inconsistent with the creation inter vivos of a present interest in Patrick as joint tenant which would ripen into complete ownership and enjoyment on the death of Mary before his death. *Batal* v. *Buss*, 293 Mass. 329 ("after I am gone this money is yours").

It is evidence in favor of the creation of a present interest in Patrick that without it the purpose of his sister Mary to keep the deposits out of her estate and to defeat any inheritance by her husband or Catherine Reigle could not be accomplished. *Castle* v. *Wightman*, 303 Mass. 74, 78. *Kaufman* v. *Federal National Bank*, 287 Mass. 97, 100, 101. The transaction is taken at its face value unless the evidence shows that it was not so intended. *Ball* v. *Forbes*, 314 Mass. 200, 203–204.

The only fact that has any considerable tendency to negative an intent to create a present interest in Patrick is the statement of his sister Mary in a letter to Patrick that "this doesn't mean anything more than a protection so safety first." (Spelling corrected.) That ambiguous statement

has little weight when balanced against the considerations already mentioned. A majority of the court think that on all the evidence the right conclusion is that Patrick took during the life of his sister Mary a valid interest as joint tenant, and now is entitled to the deposits by survivorship.

*Decree reversed.*
*Petition dismissed.*